# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 26, 2002 Session

## STATE OF TENNESSEE v. SANDRA ANN WHALEY, ALIAS SANDY ANN WHALEY

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 226185 and 226186     Stephen M. Bevil, Judge**

---

### No. E2002-01452-CCA-R3-CD
### May 21, 2003

---

The appellant, Sandra Ann Whaley, was convicted by a jury in the Hamilton County Criminal Court of driving under the influence (DUI) and assault. The trial court imposed a total effective sentence of eleven months and twenty-nine days incarceration in the workhouse, to be suspended upon service of thirty days in confinement. On appeal, the appellant challenges the sufficiency of the evidence supporting her DUI conviction and she also complains about the sentences imposed. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Leonard M. "Mike" Caputo, Chattanooga, Tennessee, for the appellant, Sandra Ann Whaley.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William H. Cox, III, District Attorney General; and Thomas Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The appellant was indicted by the Hamilton County Grand Jury on one count of DUI and one count of assault based upon the events of December 9, 1998. At trial, Officer Gary Martin of the Chattanooga Police Department testified that on December 9, 1998, he and Officer Danny Christian were dispatched to the Brainerd Road area of Chattanooga in response to a call that an

intoxicated individual driving a 1989 Ford Tempo had just left a bar in the area.[1] The officers were driving separate vehicles. According to Officer Martin, the officers observed the vehicle in question and began pursuit. Soon thereafter, despite the fact that the officers had not activated their blue lights, the vehicle parked on the side of the road. The officers parked behind the vehicle and walked towards the vehicle.

As the officers neared, the driver, Michael Randles, got out of the Ford Tempo. Officer Christian approached Randles while Officer Martin stood alongside the vehicle, acting "as a security officer." As Officer Christian was "dealing with" Randles, Officer Martin observed the vehicle's passenger, the appellant, move into the driver's seat. Officer Martin testified that the vehicle was running and he believed that the appellant "was going to run." He explained, "[A]ll she had to do was drop it in drive and hit the gas, she was gone."

Officer Martin approached the driver's side of the vehicle and asked the appellant what she was doing. The appellant advised Officer Martin "that she was driving." Officer Martin asked the appellant to exit the vehicle and she complied, stumbling as she exited. Officer Martin asserted that at that point the keys were in the ignition of the car and that the car was running. However, Officer Martin did not recall at what point the keys were removed from the vehicle. Specifically, the following colloquy occurred:

> State: Before [you administered field sobriety tests], where were the keys at this stage?
> Officer Martin: They're still in the ignition of the car, the car is still on.
> State: When did they get out of the ignition of the car?
> Officer Martin: I don't recall that. I don't know if it's after we placed them both into custody or if we shut it off at the time that I got her out of the car. Actually, that's unusual, I don't ever do that. Keys were probably still in the ignition.

Officer Martin testified that after the appellant stepped out of the vehicle, he had her perform three field sobriety tests, namely the "HGN, the walk-and-turn and the one-leg stand." Based upon the appellant's performance on the tests, Officer Martin opined that "she was not fit to be driving." He arrested the appellant for DUI and took her to the jail. Officer Christian arrested Randles for DUI and transported him to the jail.

Officer Martin related that the Hamilton County Sheriff's Department operated the jail. Therefore, Officer Martin, a city police officer, was not allowed to go into the booking area which was located deeper inside the jail. Instead, Officer Martin was required to complete his paperwork on an individual in the outer law lobby and then relinquish custody of the individual to an officer with the Sheriff's Department for the booking process.

---

[1] Officer Martin testified that at the time of trial Officer Christian's employment with the Chattanooga Police Department had been terminated.

In the law lobby of the jail, Officer Martin reviewed with the appellant an implied consent form, but the appellant refused to take a "breathalyzer" test or to sign the implied consent form. According to Officer Martin, the appellant vehemently maintained that she knew several people who would "get her out of this." The entire time the appellant was at the scene and at the jail, she insisted that she had been driving. Officer Martin explained to her that he was aware that she had not been driving; however, he stated that she had been in physical control of the vehicle.

Officer Martin testified that he instructed the appellant to sit on a bench in the law lobby. However, the appellant repeatedly attempted to leave the jail. Therefore, Officer Martin handcuffed the appellant to the bench, but she was able to slip out of the handcuffs and once again proceeded towards the door. Officer Martin grabbed the appellant's arm to prevent her escape and the appellant "swung at" him, ultimately striking Officer Martin. The appellant also attempted to "knee [Officer Martin] in the groin area." Officer Martin again handcuffed the appellant to the bench, securing the cuffs more tightly.

On cross-examination, Officer Martin acknowledged that at some point following their arrival at the jail the keys to the vehicle were placed in the property envelope containing Randles' possessions. However, Officer Martin explained, "The keys would have gone with Mr. Randles, it's his vehicle." He opined that the keys could have been either in Randles' pocket or in Officer Christian's possession. He again stated that he did not know what happened to the keys at the scene, but asserted that when he encountered the appellant the vehicle was running. Therefore, at that time, the keys could not have been in Randles' pocket because "they were in the ignition. If he had another set in his pocket, he had another set in his pocket." Officer Martin could not recall whether the appellant's hands were on the steering wheel while the car was running.

At the close of the State's proof, the appellant moved for judgments of acquittal, which motions the trial court denied. As the first defense witness, the appellant called Michael Randles. Randles asserted that he and the appellant were dating at the time of the offenses and were still dating at the time of trial. On the night of December 9, 1998, Randles was driving his mother's car. He and the appellant had dinner and then watched her son perform in a Christmas band concert. After the concert, Randles and the appellant visited two separate establishments where they drank excessive amounts of alcohol. The last establishment they visited was located on Brainerd Road. Soon after leaving the establishment on Brainerd Road, Randles noticed blue lights behind his vehicle and pulled over on a side street. Randles explained that he shut off the engine and placed the keys in his pocket. Randles noted that he had to shut off the engine in order to get the automatic seatbelts to disengage so that he could exit the vehicle. Randles got out of the the vehicle and encountered Officer Christian.

Randles admitted that he pled guilty to DUI based upon the events of that night. He further conceded that both he and the appellant were too intoxicated to drive. Nevertheless, he maintained that he was the only driver of the vehicle and that the appellant was never alone in the car in possession of the keys. He asserted that the keys were listed on his property receipt prepared when he was taken to jail. Randles acknowledged that the appellant informed Officer Martin that

she was driving the vehicle. However, Randles insisted that the appellant was lying because she was aware of Randles' previous DUI convictions and wanted to prevent his mother's car from being impounded by the police. Additionally, Randles related that he never saw Officer Martin review an implied consent form with the appellant.

Randles asserted that he was placed in a holding cell in the booking area of the jail. Through a "porthole," he witnessed Officer Martin, Officer Christian, and another officer talking with the appellant. The appellant seemed agitated. Officer Martin tried to get the appellant to admit that she had not been driving the vehicle. Randles saw Officer Martin "raise[] up," grab the appellant's arm, and tell her that she might start talking if he stuck her in a cell with the men. Randles saw the appellant's "hand come across," striking Officer Martin. Officer Martin informed the appellant that he would charge her for assaulting an officer.

Next, the appellant testified in her own defense. She asserted that she was a single mother of a seventeen-year-old son and that she was an interior designer and owner of an office furniture business. She noted that the Hamilton County Sheriff's Department was a customer of her office furniture business. The appellant maintained that on the night of December 9, 1998, she and Randles ate dinner, watched her son's concert, and went drinking. She admitted that both she and Randles were too intoxicated to drive.

When she and Randles observed blue lights behind them, Randles parked his mother's vehicle on the curb of a side street. Randles turned off the vehicle and removed the keys from the ignition. Both she and Randles opened their doors to disengage the seatbelts. The appellant noted that the seatbelts would not disengage any other way. She maintained that the vehicle was not running when Randles exited the vehicle.

The appellant testified that after Randles got out of the Ford Tempo, she got behind the steering wheel. Officer Martin approached the vehicle and asked the appellant what she was doing. The appellant looked up and responded, "Driving?" Officer Martin instructed the appellant to get out of the vehicle and she stumbled when exiting. The appellant asserted that she refused to perform any field sobriety tests because she knew she would fail them. She also acknowledged that she refused to take a "breathalyzer" test or to sign an implied consent form.

The appellant explained that because of her business connection with the Hamilton County Sheriff's Department, she was aware that the police could confiscate the vehicle of a multiple DUI offender. The appellant further noted that she was aware that Randles was a multiple DUI offender. Accordingly, the appellant contended that she slid behind the steering wheel and claimed to be driving so that the police would not "go back and get Ms. Randles's car and confiscate it and sell it at auction. . . . I could not tell Ms. Randles that we lost her car because me and Michael were out acting foolish." The appellant admitted that she had lied about driving the vehicle.

The appellant asserted that Officer Martin took her to the booking area of the jail and began pressuring her to admit that she had not been driving the vehicle. The appellant refused to

-4-

admit she was not driving. The appellant claimed that Officer Martin grabbed her and dragged her towards the holding cells, threatening that she would start to talk if he put her in the men's cell. The appellant slipped out of Officer Martin's grip and when he attempted to grab her again, she "smacked him in the face." Officer Martin told the appellant that she had just assaulted an officer.

Based upon the foregoing proof, the appellant was convicted of DUI and assault. At the sentencing hearing, the trial court observed that the appellant had a history of alcohol related offenses. Accordingly, the court imposed a sentence of eleven months and twenty-nine days for the DUI conviction and a six month sentence for the assault conviction. The court further ordered the appellant to serve sixty days of her DUI sentence in confinement, and allowed the appellant to receive "2 for 1 credit," effectively reducing the appellant's sentence of confinement to thirty days. The court also ordered the appellant to serve thirty days in confinement for the assault conviction but ordered that it be served concurrently with her sentence for DUI. On appeal, the appellant raises the following issues for our review: (1) whether the evidence was sufficient to sustain her conviction for DUI and (2) whether the trial court erred in sentencing the appellant to an excessive amount of confinement.

## II. Analysis
### A. Sufficiency of the Evidence

The appellant first contends that the State adduced insufficient proof at trial to sustain her conviction for DUI.[2] In order to successfully challenge the sufficiency of the evidence supporting her conviction, the appellant must demonstrate to this court that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Tenn. R. App. P. 13(e). In other words, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 55-10-401(a)(1) (1998) provides:
(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while:
(1) Under the influence of any intoxicant . . . .
In the instant case, it is undisputed that the appellant was too intoxicated to drive and that she was in an automobile on a road in the state of Tennessee. It is further undisputed that the appellant did not drive the vehicle. Therefore, the correctness of the appellant's conviction rests upon whether she was "in physical control" of the vehicle while she was intoxicated.

---

[2] The appellant does not contest the sufficiency of the evidence underlying her assault conviction.

In State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993), our supreme court determined that Tennessee should follow "the totality of the circumstances approach in assessing the accused's physical control of an automobile for [DUI] purposes." The circumstances to be considered by the trier of fact are

> the location of the [appellant] in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the [appellant's] ability, but for [her] intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Id.

At trial, the jury was presented with conflicting versions of the events. Officer Martin testified that when Randles exited the car, the appellant slid behind the steering wheel of the running vehicle. Officer Martin believed that the appellant was about to drive away and he considered a pursuit to be imminent. When he asked the appellant what she was doing, she informed him that she was "driving." Contrastingly, both the appellant and Randles testified that for the seatbelts to be disengaged so that Randles could exit the vehicle, Randles first had to shut off the ignition and then open the door. Randles and the appellant contended that Randles pocketed his keys and left the appellant in the car with no means to start the car. Accordingly, at trial the credibility of the witnesses was a crucial factor to be determined by the jury.

Obviously, the jury concluded that Officer Martin was the more credible witness, accrediting his version of events by returning a guilty verdict against the appellant. Granting the State the strongest legitimate view of the evidence, we conclude that the jury could have found that the appellant was in physical control of the vehicle. The proof clearly established that the appellant was sitting in the driver's seat behind the steering wheel, the vehicle was capable of being operated, and the appellant informed Officer Martin that she was driving. See Lawrence, 849 S.W.2d at 765; State v. Richard Lynn Batts, No. W2001-01602-CCA-R3-CD, 2002 WL 1482662, at *3 (Tenn. Crim. App. at Jackson, Feb. 28, 2002). Officer Martin repeatedly testified that the keys to the vehicle were in the ignition and the car was running. See State v. Johnny Wade Meeks, No. 03C01-9811-CR-00411, 1999 WL 1084230, at *3 (Tenn. Crim. App. at Knoxville, Dec. 3, 1999). In fact, Officer Martin maintained that "all she had to do was drop it in drive and hit the gas, she was gone." This court has observed that "in enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle." State v. Turner, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996). Thus, there is sufficient proof to sustain the appellant's conviction for DUI.

### B. Sentencing

Appellate review of the length, range or manner of service of a sentence is de novo. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4)

the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in her own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102 and -103 (1997), -210 (Supp. 2002); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of her sentences. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169. However, in sentencing the appellant for her misdemeanor convictions, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

DUI, first offense, is a Class A misdemeanor. See Tenn. Code Ann. § 55-10-403(a)(1) (1998); State v. Blackhurst, 70 S.W.3d 88, 91 (Tenn. Crim. App. 2001) (stating that DUI first offense is a Class A misdemeanor). Assault, as charged in the instant case, is a Class B misdemeanor. Tenn. Code Ann. § 39-13-101(a)(3) and (b) (1997). Generally, a misdemeanant is not entitled to a presumptive minimum sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, an individual convicted of a Class B misdemeanor may receive a statutory maximum sentence of six months. See Tenn. Code Ann. § 40-35-111(e)(2) (1997). Moreover, Tennessee Code Annotated section 55-10-403(a)(1) provides that a person convicted of a first offense DUI, as in the instant case, "shall be confined in the county jail or workhouse for not less than forty-eight (48) hours nor more than eleven (11) months and twenty-nine (29) days."

The appellant essentially argues that the trial court erred in imposing any amount of confinement above the statutory minimum; in other words, the appellant argues that she should have received total probation. The trial court has the authority to place a misdemeanant on probation either after service of a portion of the sentence in confinement or immediately after sentencing. Tenn. Code Ann. § 40-35-302(e)(1)(2) (1997). However, we note that, while certain Class C, D, or E offenders are entitled to a presumption in favor of probation, the appellant is entitled to no such presumption regarding her misdemeanor sentences. See State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Our supreme court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." Troutman, 979 S.W.2d at 274.

Regardless, an appellant seeking full probation bears the burden of establishing her suitability for full probation, regardless of whether she is entitled to the statutory presumption favoring alternative sentencing. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see also Tenn. Code Ann. § 40-35-303(b) (1997). To prove her suitability, the appellant must establish that granting full probation will "'subserve the ends of justice and the best interest of both the public and the [appellant].'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court may consider the circumstances of the offense, the [appellant's] potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477.

As we noted earlier, for her DUI conviction, the appellant received a sentence of eleven months and twenty-nine days with sixty days to be served in confinement. The trial court allowed the appellant to receive "2 for 1 credit," making the effective sentence of confinement thirty days. The balance of the sentence was to be served on probation. Additionally, the trial court imposed a concurrent sentence of six months for the assault conviction with thirty days to be served in confinement and the balance on probation.

At the sentencing hearing, the trial court stated:

> So in treating her the same as I would anybody else, anybody else with this many prior offenses for intoxicating type offenses and especially driving under the influence, I would feel like deserved more than the minimum sentence for a first offender, and that's what the jury found her guilty of. By the same token, it's not sufficient to lock her up and throw away the key, but I do feel like something needs to get [the appellant's] attention to let her know that – I would think as many times as many brushes with the law that she's had for alcoholic type offenses, I can't imagine her being in a car with someone who is drunk and driving and drinking herself. I just can't imagine that at all, as many scrapes, as many close calls as she's had. So I do feel like she should serve more than the minimum 48-hour sentence.

Thus, it is clear that the trial court based its decision upon the appellant's prior criminal record and her failure to rehabilitate after previous encounters with the law.

The appellant's presentence report reflects that the appellant was arrested for DUI in 1998, but the case was ultimately dismissed. In 1988, she was arrested for DUI but was convicted of reckless driving. Two years prior, the appellant was charged with public intoxication but the case was dismissed. In 1985, the appellant was convicted of DUI. In 1981, the appellant was convicted of disorderly conduct and in 1977 she was convicted of public intoxication. Notably, all of the appellant's criminal charges stem from alcohol related offenses. Her offenses are spaced over time, yet clearly the appellant has not rehabilitated if she continues to engage in criminal activity as a result of alcohol. See State v. Green, 947 S.W.2d 186, 189 (Tenn. Crim. App. 1997); State v. Randy Lee Bowers, No. E2000-00585-CCA-R3-CD, 2001 WL 15836, at *2 (Tenn. Crim. App. at Knoxville, Jan. 9, 2001); State v. Randy Lowe Evans, No. W1999-01206-CCA-R3-CD, 1999 WL 1097838, at *3 (Tenn. Crim. App. at Jackson, Nov. 24, 1999). Moreover, it was also within the trial court's

discretion to impose thirty days incarceration for the appellant's assault conviction.  Accordingly, we conclude that the trial court did not err in sentencing the appellant to an effective thirty days in confinement.

### III.  Conclusion
Based upon the foregoing, we affirm the judgments of the trial court.


_____
NORMA McGEE OGLE, JUDGE