# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 9, 2003 Session

## STATE OF TENNESSEE  v. THOMAS ANTHONY TALLEY

### Direct Appeal from the Circuit Court for Gibson County
### No. 16266    Clayburn L. Peeples, Judge

---

### No. W2002-02620-CCA-R3-CD  - Filed November 17, 2003

---

The defendant was convicted of driving under the influence, fourth offense, and violation of the implied consent law.  He contends on appeal that (1) there was no reasonable suspicion for the stop and (2) the evidence was insufficient because the officer used a non-standardized test.  Crossing the yellow line on several occasions and almost hitting a trooper provided sufficient probable cause for the stop, and the evidence was sufficient to support the conviction.  We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Thomas Anthony Talley.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The Gibson County Grand Jury indicted the defendant, Thomas Anthony Talley, on charges of driving under the influence, driving under the influence with three prior convictions for driving under the influence, violation of the open container law, improper registration, violation of the implied consent law, and violation of the lane law. Following a bench trial, the defendant was found guilty of driving under the influence, fourth offense (Class E felony), and violation of the implied consent law (Class A misdemeanor).  The other charges were dismissed.  The defendant filed a motion for new trial, and it was dismissed.  The defendant timely filed his notice of appeal.  The defendant contends on appeal that (1) there was no reasonable suspicion for the stop and (2) the

evidence was insufficient because the officer used a non-standardized test. We affirm the judgments of the trial court.

## Facts

On October 3, 2001, Max Jones and Gary Smith observed the defendant's vehicle being driven erratically. The witnesses observed the defendant cross the yellow line at least three times while they followed him. At one point, Smith observed the defendant's vehicle travel "all the way across the yellow line almost off [the other side of] the road." Smith and Jones flagged down Officer Jeff Maitland of the Gibson County Sheriff's Department. They told Maitland that the defendant was driving erratically, and they believed that something was wrong.

Before talking to Smith and Jones, Officer Maitland had also observed the defendant cross the yellow line. After speaking with them, he followed the defendant. Maitland saw the defendant cross the yellow line at least two more times. Because Maitland was transporting a prisoner at the time, he called for assistance. Officer Kenny Callahan of the Tennessee Highway Patrol responded to Maitland's request. Maitland told Callahan that he was following a vehicle being driven erratically.

Officer Callahan was traveling in the opposite direction on the same highway as the defendant. The defendant crossed into the opposite lane as he approached Callahan. The trooper stated that he "had to get over on the gravel because [the defendant] was about to hit [him]." Callahan activated his blue lights and turned around. The defendant pulled into a parking lot. Callahan and Maitland pulled in behind the defendant.

Maitland stated that the defendant was unsteady on his feet, smelled of alcohol, and had slurred speech. The defendant was holding onto his truck to keep from falling. According to Maitland, the defendant "seemed to be drunk." Callahan stated that the defendant almost fell when he got out of his truck. Callahan also testified that the defendant had to hold onto his truck to keep from falling. There was a half-empty cold beer on the front seat of the defendant's vehicle.

Callahan first administered the finger-to-nose test. The defendant was unable to perform the test correctly. Callahan next attempted to administer the walk-and-turn test. However, the trooper determined that it would be unsafe for the defendant to attempt the test because of his intoxication. Callahan asked the defendant to recite the alphabet. The defendant attempted to comply and could not. It was obvious to the trooper that the defendant was intoxicated.

The defendant was arrested for driving under the influence and various other charges. He refused to submit to a blood test and was also charged with violation of the implied consent law. Following a bench trial, the defendant was found guilty of driving under the influence, fourth offense, and violation of the implied consent law. All of the other charges were dismissed. The defendant now appeals these convictions.

**Analysis**

The defendant contends on appeal that (1) there was no reasonable suspicion for the stop and (2) the evidence was insufficient because the officer used a non-standardized test. We will first address the validity of the stop.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'[A]rticle 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485, 110 L. Ed. 2d 412 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). An officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

Initially, we must acknowledge the less demanding standard of "reasonable suspicion" as compared with "probable cause." Reasonable suspicion "can be established with information that is different in quantity or content than that required to establish probable cause [and] . . . can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); see State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997). In evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); Watkins, 827 S.W.2d at 294. "This [may] include[], but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Watkins, 827 S.W.2d at 294; see also Cortez, 449 U.S. at 418. Also, the court must consider "the rational inferences and deductions that a trained officer could draw from the facts and circumstances known to him." Watkins, 827 S.W.2d at 294; see Terry, 392 U.S. at 27 n.23.

The defendant argues that the stop was based solely on Trooper Callahan's statement that his "curiosity was stirred." This statement, taken in context, reveals why Callahan initiated the stop. Callahan testified that he "pulled [the defendant] over actually because he was in the center of the highway and [Callahan] had to get off in the gravel. That pretty much stirred my curiosity." Additionally, Officer Maitland informed Callahan that he had observed the defendant driving erratically. The defendant crossing over the yellow line into on-coming traffic several times was a sufficient basis for the officer to conduct a stop. See Tenn. Code Ann. § 55-8-123; United States v. Page, 154 F. Supp. 2d 1320, 1326 (M.D. Tenn. 2001). Based on the totality of the circumstances, Callahan had reasonable suspicion to initiate the stop. This issue is without merit.

-3-

The defendant also contends that the evidence was insufficient because the officer used a non-standardized test (reciting the alphabet). On appeal, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). Nor may this court re-weigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Id. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Although the defendant was convicted in a bench trial, the findings of the trial judge carry the same weight as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

The evidence in this case was sufficient without considering the validity of the "alphabet test." Two citizens testified that they observed the defendant driving erratically. Officer Maitland observed the defendant cross the yellow line at least three times. Officer Callahan testified that the defendant crossed into his lane of traffic, forcing the trooper off of the road. Maitland and Callahan testified that the defendant was unsteady on his feet and had to hold onto his truck to keep from falling. The defendant had a half-consumed cold beer on the front seat of his car. Maitland said that the defendant smelled of alcohol, had slurred speech, and almost fell when exiting his truck. Maitland stated that the defendant "seemed drunk." The defendant was unable to perform the finger-to-nose test administered by Callahan. The trooper did not perform further tests because the defendant could barely stand. Callahan felt that the defendant was "obviously drunk."

This Court has previously found evidence of DUI sufficient, even though it consisted entirely of the arresting officer's testimony. In State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993), the evidence was sufficient to support a DUI conviction when the trial court relied only upon the arresting officer's testimony that the defendant was driving under the influence. In Vasser, the defendant did not complete the field sobriety tests and refused to take a breath test. Id. at 543-44. In State v. Corder, 854 S.W.2d 653, 654 (Tenn. Crim. App. 1992), the defendant was found asleep in his car and no field sobriety tests were administered. This Court affirmed the DUI conviction because the trial court accredited the testimony of the arresting officer over the other witnesses. Id. Driving under the influence may be shown by circumstantial evidence. State v. Lawrence, 849 S.W.2d 761, 763 (Tenn. 1993); Corder, 854 S.W.2d at 654. The proof in the present case was clearly sufficient to allow a rational fact finder to conclude beyond a reasonable doubt, based upon both direct and circumstantial evidence, that the defendant was driving under the influence. This issue is without merit.

The defendant urges this Court to require officers to perform standardized field sobriety tests in order to convict persons of driving under the influence. As we have noted above, intoxication can

be shown by both direct and circumstantial evidence. A defendant's level of intoxication must be assessed on a case-by-case basis. In <u>State v. Lawrence</u>, the Tennessee Supreme Court adopted a totality of the circumstances approach to assess whether an accused was in physical control of an automobile for purposes of the DUI statute. 849 S.W.2d 761, 765 (Tenn. 1993). The <u>Lawrence</u> court found that the jury may consider *all* circumstances surrounding an offense in determining whether a defendant is in control of an automobile for purposes of the DUI statute and as circumstantial evidence that the defendant actually drove the vehicle. <u>Id.</u> In determining whether a defendant was intoxicated for purposes of the DUI statute, we also look at the totality of the circumstances. Therefore, we decline the defendant's opportunity to establish standardized field sobriety tests that must be present in every DUI case.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE