STATE of Tennessee, Plaintiff–Appellee,

v.

David LAWRENCE, Defendant– Appellant.

Supreme Court of Tennessee, at Knoxville.

March 1, 1993.

Steven R. Stout, Nashville, for defendant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Merrilyn Feirman, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

**OPINION**

DROWOTA, Justice.

The Defendant, David Lawrence, has appealed his conviction of driving while under the influence of an intoxicant, third offense, in violation of T.C.A. § 55–10–401. He was also convicted of violating the implied consent provision of T.C.A. § 55–10–406(a)(3) for refusing to submit to a blood-alcohol test. We granted the Defendant's Rule 11 Application to decide whether the evidence is sufficient to sustain his conviction under T.C.A. § 55–10–401, which makes it unlawful to "drive or to be in physical control" of an automobile while under the influence of an intoxicant.

## I.

The record reveals that during the evening hours of March 10, 1990, Deputy Sheriff Roberts of the Johnson County Sheriff's Department, received a report of a vehicle blocking Brushy Fork Road, a public, narrow gravel road maintained by Johnson County. Upon his arrival at the scene, Officer Roberts saw the Defendant's pickup truck parked "completely in the road." Officer Roberts testified that, in order to get around the Defendant's vehicle, he had to drive his patrol car into a ditch.

After exiting his patrol car, Officer Roberts approached the Defendant's vehicle and found him asleep inside the truck. The Defendant was sitting behind the steering wheel leaning towards the passenger side of the vehicle. The motor was off and the Defendant was alone in the vehicle. No other persons were in the area. The keys to the truck were in the Defendant's pocket. The officer tapped on the window and the Defendant awoke after a "minute or so." Officer Roberts smelled a strong odor of alcohol and discovered an unopened quart bottle of beer inside the truck. When the Defendant failed a field sobriety test, he was arrested for violating T.C.A. § 55–10–401. The Defendant refused to submit to a blood-alcohol test and refused to sign the refusal form. Officer Roberts, having nine years experience as a police officer, offered his opinion at trial that the Defendant was intoxicated. The Defendant did not take the stand or present any proof. No explanation was given as to why the Defendant, in an inebriated condition, was asleep in the truck or why it was parked in the roadway.

The trial court, sitting without a jury, held:

> Looking at the different elements, there's no dispute but what this is a public road, so that takes care of that element. And in my opinion, there was enough evidence to consider this man under the influence of an intoxicant to the point that it was affecting his driving, and probably had been for some time prior to that. You don't get drunk within a few minutes, even if you chug-a-lug, in my opinion. Now, the—the other element, that is—the officer didn't see him

driving, but the law says driving or in physical control, and that's the only part that's even close. In my opinion, I agree with [defense counsel] that the cases holding where the motor is running and the lights are on and the keys are in the ignition, those are all strong—that's—that's strong evidence that the car was in physical control of the driver. In this case, we've got a defendant sitting in the driver's seat with the keys in his pocket. And it was still light. There's no point in having the lights on when it is light. I'm of the opinion that beyond a reasonable doubt, that this defendant was in physical control even though the motor was off and the keys were in his pocket.

The Court of Criminal Appeals affirmed on the basis that

> [a] deputy sheriff found the [defendant] sound asleep in his truck, parked in the middle of an unpaved, very narrow, one-lane country road. He was on the driver's side of the truck and was alone in the vehicle. He had the keys to his truck in his pocket and he was drunk at the time. He had an unopened quart bottle of beer with him, but no other open or unopened containers of alcohol. Although he refused to submit to any test for his blood alcohol content, his poor performance on a sobriety test confirmed his inebriated condition.

> The [defendant] presented no proof to dispute anything about which the officer testified.

> \*    \*    \*

> There was ample, indeed overwhelming evidence from which any rational trier of fact would find beyond a reasonable doubt that the [defendant] violated T.C.A. § 55–10–401(a) by being in physical control of his truck upon a public highway while under the influence of an intoxicant....

On appeal to this Court, the Defendant does not challenge the facts as found below, including his intoxicated condition. Rather, he challenges the sufficiency of the evidence to support his conviction. He claims there is no proof of physical control and insufficient proof of driving.

## II.

The controlling statute, T.C.A. § 55–10–401(a) provides that "[i]t shall be unlawful for any person or persons to *drive or to be in physical control* of any automobile or any motor driven vehicle on any of the public roads and highways of the State of Tennessee, or on any streets or alleys ... or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant...." (Emphasis added.) The plain language of T.C.A. § 55–10–401(a) suggests that the statute can be violated in one of two ways—by "driving" or by being in "physical control" of an automobile while intoxicated. The courts below found that the Defendant violated the statute by being in physical control.

Justice Daughtrey of this Court, while a member of the Court of Criminal Appeals, succinctly summarized our "physical control" cases in a 1988 unpublished opinion:

> [T]here are two types of situations in which a person will be found guilty of DUI by being in "physical control" of an automobile while he or she is under the influence of an intoxicant. In both of these fact patterns, the state is able to prove, either directly or circumstantially, that the defendant possessed the automobile or had the potential means of driving.

The first line of cases involves the situation in which the intoxicated driver steers an inoperable automobile that is pushed from behind by either a person or another automobile. *See Hester v. State,* 196 Tenn. 680, 270 S.W.2d 321 (1954); *State v. Lane,* 673 S.W.2d 874 (Tenn. Crim.App.1983). The courts have concluded that, regardless of the source of the automobile's motion, its presence on the road constitutes a threat to all others when it is guided or operated by an intoxicated person.

A second line of DUI "physical control" cases involves the situation in which the defendant is found intoxicated either in or beside the parked vehicle and the circumstantial evidence strongly indicates that the defendant drove to the location in an intoxicated condition. For example, in *State v. Farmer,* 675 S.W.2d 212 (Tenn.Crim.App.1984), the defendant was found sitting behind the wheel of his car. The keys were in the ignition, the ignition was on, but the engine was not running. The defendant admitted that he was driving the car when the tire went flat and that he had pulled over to the shoulder where the police found him. The jury rejected his contention that he was sober while driving but drank 12 or more beers after the flat occurred. Similarly, in *State v. Ford,* 725 S.W.2d 689 (Tenn.Crim.App.1986), the defendant was found asleep or passed out behind the steering wheel. The engine was still running but the car was not moving because it had struck a guardrail. In addition to being very unsteady on his feet, the defendant smelled of alcohol and several full and empty beer cans were found in his car. In *Hopson v. State,* 201 Tenn. 337, 299 S.W.2d 11 (1957), the defendant drove her car off the road and hit the side of a building. A witness observed the defendant get out of the car and testified that the defendant appeared intoxicated.

In each of these cases, the defendant's automobile was stationary at the time of arrest. Nevertheless, the courts concluded that sufficient circumstantial evidence existed to show that the defendants had driven the vehicle while they were under the influence of intoxicants. *See State v. Harless,* 607 S.W.2d 492, 493 (Tenn.Crim.App.1980) (DUI may be established by circumstantial evidence). Moreover, in each case there was direct evidence ... of physical control over the vehicle.

A review of the cases cited above reveals that in order for a violation of T.C.A. § 55–10–401(a) to occur, the vehicle's engine need not be running, *Hester,* 196 Tenn. at 682–83,[1] and the vehicle need not be actually moving at the time, *Ford* at 690–91. Convictions have been sustained even

---

1. "Thus it seems to us that the test is, was the person in control of his automobile in an inebriated condition, if he was, then he is guilty under the statute whether the motor of the car was running or not so long as the car was on the highway...."

though no one saw the vehicle in motion or the accused driving. *See, e.g., Hopson* and *Farmer, supra.* This is so because "[l]ike any other crime, driving under the influence of an intoxicant can be established by circumstantial evidence." *Ford* at 691; *Harless* at 493. These general statements aside, however, Tennessee has not addressed the precise question presented here, i.e., whether an intoxicated defendant has "physical control" of a vehicle in violation of T.C.A. § 55–10–401(a) when he is asleep on the driver's side of a vehicle parked on a public road with possession of the keys.

Courts in other states construing the meaning of "physical control" in the context of intoxication statutes generally do not require that the vehicle be moving at the time in question. *See, e.g., State v. Peterson,* 236 Mont. 247, 769 P.2d 1221, 1223 (1989) (drunk defendant, who was found asleep in the driver's seat of vehicle which had run off the road, with keys to the vehicle in his pocket, was in physical control even though he was found slumped over to the right toward the passenger's seat); *State v. Ghylin,* 250 N.W.2d 252, 254 (N.D.1977) (defendant was in physical control when seen exiting vehicle in intoxicated condition); *Kansas City v. Troutner,* 544 S.W.2d 295, 300 (Mo.1976) (finding of physical control upheld where intoxicated defendant was found slumped over steering wheel while vehicle was motionless); *Hughes v. State,* 535 P.2d 1023 (Okla.1975) (intoxicated defendant found in parked vehicle behind the wheel with his head leaning towards the passenger side of the vehicle was in physical control).

Definitions of physical control itself vary:

[N]umerous courts have defined actual physical control to mean existing or present bodily restraint, directing influence, domination or regulation of any vehicle, a definition apparently not including movement, as several of the courts applying the definition have specifically pointed out.

Other definitions of actual physical control ... include the following: actual physical control is not limited to a moving vehicle, but means either the man-

agement of the movements of the machinery of a motor vehicle or the management of the movement of the vehicle itself; being in actual physical control means more than the ability to stop an automobile; it means the ability to keep from starting, to hold in subjection, to exercise directing influence over, and the like; and actual physical control requires that a person be in the driver's seat of the vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move.

Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statutes,* 93 A.L.R.3d 7, 18 (1979). Although being in "physical control" does not require that the vehicle be in motion, "driving" generally does. 93 A.L.R.3d at 15 ("Many courts have stated that driving [as distinguished from physical control] requires that the vehicle be in motion in order for the offense of drunk driving to be committed."). *But see, State v. Sweeney,* 77 N.J.Super. 512, 187 A.2d 39 (1962) (a person "drives" when he enters a stationary vehicle, turns on the ignition, starts and maintains the motor in operation, and remains in the driver's seat with the intent to move the vehicle).

The Alabama Supreme Court, in *Cagle v. City of Gadsden,* 495 So.2d 1144 (Ala. 1986), adopted a practical approach to determining whether an intoxicated driver of a vehicle has physical control of it. Prior to *Cagle,* physical control was defined in Alabama as the "exclusive physical power, and present ability, to operate, move, park, or direct whatever use or non-use is to be made of the motor vehicle at the moment." *Id.* at 1145. The test was (1) whether the Defendant had actual or constructive possession of the vehicle's ignition key or, alternatively, proof was presented that a key was not needed to operate the vehicle, (2) the Defendant was found behind the wheel and, but for the intoxication, physically capable of starting the engine and causing the vehicle to move and, (3) the vehicle was operable to some extent. *Id.*

The Supreme Court of Alabama in *Cagle* held that the three-part test above was too restrictive because it would be impossible to obtain a conviction of an intoxicated driver if he simply tossed the keys out the window or slid over to the passenger side of the vehicle upon seeing an approaching officer. *Id.* "In both of these hypothetical situations the result reached is untenable, especially in light of the strong policy behind legislative and judicial efforts to eliminate the drinking driver from [the] highways." *Id.* at 1146. Accordingly, the Court abandoned the three-part test and adopted a "totality of the circumstances" approach for determining physical control. The Court noted that the factors comprising the three-part test would still be relevant, but not dispositive in all cases, and any other factors presented by the proof could be considered as well. *Id.* at 1147.

### III.

■ We are persuaded that the totality of the circumstances approach in assessing the accused's physical control of an automobile for purposes of T.C.A. § 55–10–401(a) should be followed in Tennessee. This method is neither so restrictive so as to thwart the obvious statutory aim of enabling the drunken driver to be apprehended before he maims or kills himself or someone else, nor is it so expansive as to permit a conviction where clearly not warranted, i.e., an intoxicated person sitting in the driver's seat of an automobile having no tires and mounted on blocks. Thus, when the issue is the extent of the accused's activity necessary to constitute physical control, as in the instant case, the test allows the trier of fact to take into account *all* circumstances, i.e., the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent

to which the vehicle itself is capable of being operated or moved under its own power or otherwise. The same considerations can be used as circumstantial evidence that the defendant had been *driving* the vehicle.

■ Applying the totality of the circumstances approach, we hold that the Defendant in the case at bar was in physical control of his automobile within the meaning of T.C.A. § 55–10–401(a). The Defendant was inside of the vehicle, behind the wheel, and had possession of the keys. He was alone in the truck and no one else was in the area. The record is undisputed that, but for his intoxication, he had the present physical ability to direct the vehicle's operation and movement. The Defendant could have at any time started the engine and driven away. From a mechanical standpoint, the vehicle was capable of being immediately placed in motion to become a menace to the public and to its drunken operator. It is our opinion that the Legislature, in making it a crime to be in physical control of an automobile while under the influence of an intoxicant, "intended to enable the drunken driver to be apprehended before he strikes." *See Hughes*, 535 P.2d at 1024.[2] We agree with the observation that "[a] motor vehicle is recognized in the law as a dangerous instrumentality when in the control of a sober person; in the control of a drunk, the dangerous instrumentality becomes lethal. Therefore ... the court [should interpret] the drunk driving statute in a way that [keeps] drunks from behind the steering wheels of motor vehicles, even when the drunk need[s] to 'sleep it off.' " *Stevenson v. City of Falls Church*, 243 Va. 434, 416 S.E.2d 435 (1992) (Compton, Carrico, and Hassell, JJ, dissenting). The fact that the Defendant chose to park his vehicle on a country road and sleep off the effects of the alcohol is immaterial. The road where

---

**2.** *Hughes* involved an intoxicated driver sleeping behind the wheel. The Oklahoma court noted that, "[w]e believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested

may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away. He therefore had physical control...." *Hughes* at 1024.

the Defendant was located was a public road and we believe the "better policy is that a person should ascertain his ability to drive *before* climbing behind the wheel and terrorizing the roadways of this state." (Emphasis in original.) *Peterson,* 769 P.2d at 1224.

It bears noting that the Defendant could probably have been convicted of "driving," the alternative way of violating T.C.A. § 55–10–401. Although no one actually saw the Defendant driving his vehicle, the evidence amply supports the conclusion that he did so. From the undisputed facts in the record, the inference may reasonably be made that the Defendant drove his vehicle while under the influence of an intoxicant. The Defendant "must have driven [his vehicle] on the road to the point where it was found; in the absence of anything to suggest that this might have been done by someone else, it is reasonable to infer that it was done by [the Defendant]." *Farmer v. State,* 208 Tenn. 75, 343 S.W.2d 895, 897 (1961). However, as stated earlier, the courts below found only that the Defendant was in physical control of his vehicle.

Finally, the Defendant's argument that there is a material variance between the indictment and the proof is without merit. The indictment specifically charges a violation of T.C.A. § 55–10–401 and contains sufficient information to put the Defendant on notice of the State's theory against him and the facts to be proven at trial. *See State v. Estes,* 199 Tenn. 406, 287 S.W.2d 40–42 (1956).

The judgment of the courts below are affirmed. Costs are taxed against the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.