**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**SEPTEMBER 1998 SESSION**

FILED

November 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 03C01-9707-CR-00284** |
| Appellee, | ) | |
| | ) | **McMINN COUNTY** |
| VS. | ) | |
| | ) | **HON. CARROLL L. ROSS,** |
| **ALBERT L. McCOWAN** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (DUI; DORL) |

FOR THE APPELLANT:                          FOR THE APPELLEE:


**JULIE A. MARTIN**                          **JOHN KNOX WALKUP**
P.O. Box 426                                Attorney General & Reporter
Knoxville, TN 37901-0426
        (On Appeal)                         **MICHAEL J. FAHEY, II**
                                            Asst. Attorney General
**CHARLES CORN**                            John Sevier Bldg.
District Public Defender                    425 Fifth Ave., North
                                            Nashville, TN 37243-0493
**THOMAS KIMBALL**
Asst. District Public Defender             **JERRY N. ESTES**
110-1/2 Washington Ave., Northeast          District Attorney General
Athens, TN 37303
        (At Trial)                          **RICHARD NEWMAN**
                                            Asst. District Attomey General
                                            P.O. Box 647
                                            Athens, TN 37303-0647


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

**O P I N I O N**

A jury convicted the defendant of driving under the influence of an intoxicant (DUI), third offense, and driving on a revoked license (DORL), seventh offense. Following a sentencing hearing, the trial court sentenced the defendant to two consecutive terms of eleven months and twenty-nine days in jail, the first term to be served at seventy-five percent (75%) and the second term to be suspended after service of forty-five days. The defendant now appeals, presenting the following issues for review:

> I. Whether the evidence was sufficient to prove beyond a reasonable doubt that the defendant drove on a public roadway;
>
> II. Whether the trial court erred in failing to grant a mistrial after the arresting officer testified to the defendant's prior run-ins with other officers and the defendant's prior DUI conviction; and
>
> III. Whether the trial court improperly sentenced the defendant.

After a review of the record and the applicable law, we affirm.

Near midnight on February 28, 1997, Charlene Anderson heard an engine "revving" loudly in her backyard. Within a few seconds, she and her daughter looked out the back door and saw a man who was later identified as the defendant slumped behind the wheel of a car that had been driven into their backyard. The defendant's car was resting in a soft, grassy area, facing the Andersons' gravel driveway. The area was marked by one set of tire tracks, indicating that the defendant had spun around or backed up in the yard and was attempting to return to the Andersons' gravel driveway before getting stuck in the mud. The only manner of entering or exiting the Andersons' backyard was from McMinn County Road 274 down the Andersons' gravel driveway; all other access to the backyard was blocked by barbed wire fencing.

Mrs. Anderson's husband and her son, Nick, attempted to wake the

2

defendant. The defendant's only response was mumbling. When Nick smelled alcohol on the defendant's breath, he removed the keys from the ignition in the defendant's car. Nick, who worked part-time as a local police officer, had "no doubt" that the defendant was "dead drunk."

Deputy Brad Lane of the McMinn County Sheriff's Department and another officer responded to the scene. Deputy Lane attempted to wake the defendant by shaking him several times and talking loudly to him. At first, the defendant was not very responsive. Finally, the defendant stirred and, with some assistance from the officers, exited his vehicle, which smelled like alcohol and was littered with a couple of empty beer bottles. The defendant did not appear to know what was happening or where he was and seemed rather unresponsive. However, when asked what he was doing there, the defendant responded that he was at his own home, which, in reality, was a couple of miles away. When asked for identification, the defendant produced a state identification card rather than a driver license. A records search revealed that the defendant's driver license had been revoked.

The defendant was unsteady on his feet, had trouble walking on his own power, took little interest in what was happening around him, and had slurred speech, and very red, glossy eyes. Deputy Lane attempted to administer a field sobriety test to the defendant, but he was not responsive. Based on his observances of the defendant, Deputy Lane placed the defendant under arrest for DUI and transported him to the local hospital for a blood test. En route to the hospital, the defendant agreed to submit to a blood test, but once at the hospital, the defendant became belligerent and refused to comply. At no time did the defendant exhibit any signs of injury or complain he was hurt or in pain.

3

At trial, the defendant testified that he had quit drinking alcohol in October 1996 because of his history of DUI and DORL charges. According to the defendant, on the night of February 28, 1997, he had visited a bar in Sweetwater with his friends Billy Plemons and Rhonda Spurgeon, who had been acting as designated driver. At the bar, he met up with Scotty Anderson, Charlene Anderson's son, who lives in a trailer near the Andersons' home. The defendant testified he had been hit in the head by an unknown assailant before entering the bar, presumably because it was an "all-white" bar and the defendant, who is black, was not refused entry. He contended that Rhonda then drove the defendant to the Andersons' yard and left him in his car while Scotty drove Rhonda and Billy home in his own car. Scotty was to return home "shortly," but the defendant did not see him again that evening. He could not remember how long he had been in the Andersons' backyard because, according to him, the injury to his head caused so much pain that he passed out. He claimed that he had told Deputy Lane he was injured, but that Deputy Lane paid no attention to him. He also claimed that the engine Mrs. Anderson heard must have been her son's car engine as he left to drive Rhonda and Billy home. Further, he claimed he had spoken with his girlfriend, who works at the local hospital, and because his girlfriend told him that no one had seen him at the hospital that evening, he believed Deputy Lane never took him to the hospital or requested he take a blood test. He denied ever driving or attempting to drive his car that evening.

No witnesses corroborated the defendant's testimony. During his testimony, the defendant claimed that Rhonda had not wanted to testify and he had not asked her to testify. He also claimed that because he had been incarcerated prior to trial, he did not "have the means" to ask Scotty to testify on his behalf.

Based on this evidence, the jury found the defendant guilty as charged and

4

recommended a fine of one thousand five hundred dollars ($1500) for DUI and five hundred dollars ($500) for DORL. Upon being presented with certified copies of two prior DUI convictions and six prior DORL convictions, the jury found the defendant guilty of third offense DUI and seventh offense DORL, modifying their recommended fines to seven thousand dollars ($7000) and three thousand dollars ($3000), respectively.

The sentencing hearing was held immediately following trial, with no objection from the defendant. At the sentencing hearing, the defendant testified he was currently incarcerated in county jail for possession of marijuana. On the third offense DUI count, the trial court sentenced the defendant to eleven months and twenty-nine days incarceration at seventy-five percent (75%), to run consecutively to the term the defendant was currently serving for drug possession. On the seventh offense DORL, the trial court sentenced the defendant to a consecutive eleven month, twenty-nine day incarceration term, to be suspended after serving forty-five days. The trial court also imposed a total of ten thousand dollars ($10,000) in fines, as recommended by the jury. The defendant now appeals.

The defendant first contends that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he drove while under the influence. Specifically, the defendant contends that the State failed to prove he drove or was in physical control of an automobile on a public roadway. We disagree.

In order to convict an individual of driving under the influence, the State must prove that while under the influence of an intoxicant, the individual drove or was in "physical control" of a motor vehicle on any public road or premises "generally frequented by the public at large." See T.C.A. § 55-10-401(a). In this case, the State presented

5

circumstances warranting the jury's conclusion that the defendant had been driving the car or had physical control of the vehicle on a public roadway. As the Tennessee Supreme Court has stated, "driving" may be established by circumstantial evidence:

> [I]t was plaintiff in error's car; he was in it, drunk and asleep at the wheel; it must have been driven on the road to the point where it was found; in the absence of anything to suggest that this might have been done by someone else, it is reasonable to infer that it was done [the car was driven] by plaintiff in error.

Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961). "Physical control" of a vehicle (the alternate way of violating T.C.A. § 55-10-401) may be proven by evidence that the defendant was found alone behind the wheel of his car with the keys and---but for his intoxication---had the present ability to operate, move, or control the car. State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993).

Here, Charlene Anderson testified she had heard a car racing its motor in her backyard, and upon immediate investigation, she had discovered the defendant slumped over the steering wheel of his car, which was resting in her backyard. The keys were found in the ignition, and no one else was seen near the car. Marks on the ground indicated that the defendant's car had been driven from the Andersons' gravel driveway and had spun around before becoming stuck. The Andersons' backyard is accessible by car only by their gravel driveway and McMinn County Road 274. The defendant does not dispute that McMinn County Road 274 is a "public roadway."

While the defendant testified that someone else had driven him to the Andersons' backyard that evening but had left before being detected, the jury was within their prerogative to disregard his version of events. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Thus, the evidence was sufficient for the jury to conclude that the defendant had been driving or was in physical control of his vehicle that evening. See

6

Lawrence, 849 S.W.2d at 765; Farmer, 343 S.W.2d at 897. Moreover, because the defendant's car "must have been driven on the road to the point where it was found," the only reasonable explanation provided by the evidence is that the defendant's car had been driven on McMinn County Road 274, a public road, before it was driven down the Andersons' gravel driveway and into their backyard. See id. Therefore, taking the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of driving on a public roadway while under the influence of an intoxicant. See T.C.A. § 55-10-401(a); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Next, the defendant contends the trial court should have granted a mistrial in response to Deputy Lane's testimony. On direct examination, Deputy Lane testified that he knew the defendant "through previous encounters." A couple of minutes later, when asked about the defendant's demeanor, Deputy Lane stated, "He called me several different, by several different other officers' names, three or four different officers that work in the sheriff's department that have evidently must have had some kind of dealing with him in the past." The defense attorney objected, but the prosecutor continued to question Deputy Lane. When defense counsel asked for a ruling on his objection, the trial court cautioned Deputy Lane to testify only regarding what the defendant said to him, but not to offer his opinions about what the defendant had said.

Questioning resumed. The State asked Deputy Lane what he discovered when he ran a check to determine the status of the defendant's driver license. Deputy Lane responded, "So through a check with the dispatcher, it was revealed that his driver's [sic] license are [sic] revoked for a DUI conviction." Defense counsel again objected.

7

During a bench conference, the trial court stated that the appropriate cure would be an instruction, but defense counsel stated, "I think the only cure in this situation is to stop." The trial court refused to "give a mistrial for that single comment," stating, "I think everybody kind of knows if you get revoked it's probably over a DUI." No curative instruction was ever given.

On appeal, the defendant claims that mentioning the defendant's prior relations with law enforcement officers and prior conviction for DUI resulted in prejudicial error. The defendant further contends that the trial court should have granted a mistrial due to the cumulative effect of so many prejudicial errors in such a short time.[1]

As the trial court cautioned during Deputy Lane's testimony, the testimony that the defendant referred to him by other names was admissible, but the reason why--- that the defendant must have had "past dealings" with other officers---was not. It was also improper for Deputy Lane to gratuitously explain that the defendant's license was revoked for a DUI conviction. Because of such improper testimony, the State came dangerously close to a mistrial.

Even though Deputy Lane's comments were erroneous, however, we find them harmless under the circumstances.[2] Considering the record as a whole, the evidence of the defendant's guilt is so overwhelming that even without the evidentiary

---

[1] In his brief, the defendant also mentions, in passing, that the trial court should have at least given a curative instruction. However, the defendant failed to request a curative instruction during trial and failed to raise this issue in his motion for a new trial. Thus, whether the trial court should have given a curative instruction is waived for appellate review. See, e.g., T.R.A.P. 3(e); State v. McPherson, 882 S.W.2d 365 (Tenn. Crim. App. 1994)(failure to request curative instruction waives issue); State v. Spadafina, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996)(issue of whether lesser included instruction should have been given is waived unless included in motion for new trial).

[2] The defendant argues that under T.R.A.P. 36(b), the resulting error "should not be deemed harmless error in light of the prejudice to the judicial process which results when this type of activity occurs." We disagree because the error involved in this case was not of the type which results in "prejudice to the judicial process." See T.R.A.P. 36(b) & cmt (b).

8

errors, it is beyond a reasonable doubt that the outcome of the trial would be the same. See T.R.A.P. 36(b); see also State v. Walker, 910 S.W.2d 381 (Tenn. 1995)(felony murder conviction upheld in light of overwhelming evidence of guilt and despite improperly admitted evidence). Accordingly, we affirm the defendant's convictions.

The defendant also complains about the sentence imposed by the trial court. First, he complains "there was only a perfunctory hearing commenced immediately after the jury was excused." Separate sentencing for misdemeanor charges is not necessary. T.C.A. § 40-35-302(a). However, if the trial court does not conduct a separate sentencing hearing, it must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Id.; see State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). Here, the trial court gave both the State and the defendant an opportunity to be heard on the issue of sentencing. Instead of presenting argument, the defendant testified. At no time did he object to the sentencing hearing being held immediately following his trial, request that the hearing be postponed, or state that he needed more time to adequately prepare. Thus, the defendant will not now be heard to complain.

The defendant also contends he is entitled to a new sentencing hearing because the trial court failed to adhere to the procedures in the Criminal Sentencing Reform Act. Specifically, the defendant complains that "there is no evidence in the record that the trial court considered any statutory mitigating or enhancing factors" and that "the trial court failed to make any findings of fact beyond his prior criminal history" to the degree meaningful appellate review is precluded. We disagree.

First we note that even if a record fails to affirmatively show that the trial

court failed to consider the proper sentencing principles or exactly follow the statutory sentencing procedures, meaningful appellate review is not necessarily precluded. Rather, where the record fails to contain an affirmative showing "that the trial court considered the sentencing principles and all relevant facts and circumstances," the trial court's sentencing decision is not entitled to a presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see T.C.A. § 40-35-401(d). Contrary to the defendant's assertion, the defendant is not automatically entitled to a new sentencing hearing.

Here, the record reflects that the State requested consecutive, maximum sentences because of the defendant's criminal history and lack of rehabilitation.[3] The defendant did not argue the application of any mitigating factors or submit any mitigating factors for the trial court's consideration. The defendant was the sole witness during the sentencing hearing, and if anything, his testimony aided the State's cause by establishing that he was currently incarcerated for drug possession. Based on the only evidence before it---which was evidence of the defendant's many previous convictions and, inferentially, his lack of potential for rehabilitation---the trial court imposed mid-range sentences on the defendant. See T.C.A. §§ 55-10-403(a)(1), 55-50-504(2).

On appeal, the defendant admits the trial court specifically found that he had a previous history of criminal convictions, which is a statutory enhancing factor, see T.C.A. § 40-35-114(1), and thus contradicts his simultaneous assertion that the trial court failed to consider any statutory enhancing factors. As for the defendant's claim that the trial court failed to consider any statutory mitigating factors, none were argued or

---

[3]According to the transcript, the prosecuting attorney mentioned during his argument that he filed a list of enhancing factors with the trial court. The record on review, however, fails to contain any such filing.

10

presented to him for consideration, and from our review of the record, none are applicable to the defendant. In short, our review of the record indicates that the trial court considered the sentencing principles and all relevant facts and circumstances. Quite simply, the record here reflects that the defendant's previous history of criminal convictions, which includes at least two DUIs, and six DORLs, and one drug possession charge, justifies the sentence imposed. This is true, even in the absence of a presumption of correctness. The defendant's challenge to his sentence must fail.

Finding no merit in the defendant's arguments, his convictions and sentence are affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
DAVID G. HAYES, Judge

11