IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2012

## STATE OF TENNESSEE v. ROBERT G. BARHAM

**Appeal from the Circuit Court for Madison County**
**No. 11151     Roy B. Morgan, Jr., Judge**

---

**No. W2011-02348-CCA-R3-CD  - Filed September 17, 2012**

---

A Madison County Circuit Court jury convicted the Defendant-Appellant, Robert G. Barham, of driving under the influence, first offense, and driving under a revoked license, fifth offense, both Class A misdemeanors, and imposed a five hundred dollar fine for each.  The trial court sentenced Barham to a concurrent term of eleven months and twenty nine days confinement.  The sole issue presented for our review is whether the evidence was sufficient to support Barham's convictions.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

George Morton Google, District Public Defender; Susan D. Korsnes, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Robert G. Barham.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Anna B. Cash, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The following proof was adduced at trial:  Around one or two o'clock in the morning on June 30, 2010, Jerry Wayne Morris was asleep in bed at his home on Hatton Street in Jackson, Tennessee when he was awakened by "a big bang."  Concerned about his company van, Morris ran out to investigate and observed "a car like rested up against the back of [his company van]."  Morris testified that he saw Barham "craw[l] out the window" of the car. He thought Barham exited from the passenger's side window, because the driver's door would not open or was up against the van.  However, Morris conceded he "really didn't pay attention to" the driver's side door to know whether it was obstructed.  Morris testified that he did not see anyone else in or around the car.

Morris said after Barham exited the car, he left and "just walked somewhere." Five or ten minutes later, Barham walked back to the car. Morris testified that the area was illuminated by street lights and he "immediately recognized [Barham] by his dark . . . clothing" and facial hair. At trial he did not recall what Barham wore the morning of the wreck, but he knew that "the guy that came back had on the same thing that the guy left with." When the police arrived, Morris told them he had seen Barham exit the car.

On cross-examination, Morris stated he had been subpoenaed to City Court and recalled talking with the District Attorney and defense attorney about the instant offense. He said he could not recall telling the attorneys that he "could not identify the person who was driving [the car]." He denied telling Barham's father, Robert Perkins, "that [he] could not identify the person that was driving [the car]." Morris acknowledged that he did not see Barham "operating [the car]."

Officer Clay Haddix, a twenty-nine year veteran of the Jackson Police Department, was dispatched to the wreck at Hatton and Hollywood streets around 2:55 a.m. When Officer Haddix arrived on the scene, he saw "a silver Camaro . . . sitting up against the van . . . . [and Barham] standing at the driver's side door reaching into [the car]." Officer Haddix asked Barham what he was doing, and Barham told him he was getting the stereo system out to prevent a theft. Officer Haddix "work[ed] the accident" while the other officers interviewed Barham. Officer Haddix overheard Barham's "voice . . . kinda getting loud." He additionally observed that Barham was "belligerent," "unsteady on his feet," and had an odor of alcohol on his breath. Officer Haddix opined that Barham was impaired. On cross-examination, Officer Haddix said that he did not know whether the driver's side door was operable. Officer Haddix acknowledged that he did not observe Barham drive or operate the car.

Officer Julie Mullikin of the Jackson Police Department arrived at the scene of the wreck "not long after Officer Haddix" and observed a silver Camaro wrecked into a van. She saw Morris, who "did advise that he had seen the driver run away from the scene" and then return. She said Barham was the driver identified by Morris. Officer Mullikin said that she and Officer Stanfill spoke with Barham and "asked him if he was driving the vehicle or if he knew anything about it." Barham replied, "no." After the officers searched Barham for weapons, they located the keys to the car and a CD player faceplate, both in Barham's pockets. The officers asked Barham about the items, and he replied that "he had come to the scene and he knew the owner and he was gonna keep it so no one would steal it." The officers explained to Barham that the car "was not movable that [they] thought and there was no point in taking the keys, nobody could steal [it]."

Officer Mullikin could not recall if Barham told her how he arrived at the wreck, why he was there, or how he knew to be at the wreck. She further testified that Barham did not indicate if anyone else was with him that night. Based on her interaction with him, Officer Mullikin opined that Barham was intoxicated. She specifically observed that he was unsteady on his feet, had an odor of alcohol about him, and had slurred speech. Barham also admitted that he had been drinking that night.

Officer Stanfill or Sergeant Clack attempted to conduct a field sobriety test with Barham; however, it was unsuccessful because Barham "refuse[d] to do anything" and became "very combative[.]" The officers had Barham sit down on the ground to prevent him from trying to lunge at or fight the officers. Barham was then taken into custody, arrested for DUI, and read his implied consent form, which he refused to sign. Officer Mullikin ran a driver's license check on Barham and discovered that his license had been revoked. The State offered into evidence the implied consent form and Barham's driver's history form. Officer Mullikin testified that the only people at the scene of the wreck were Barham, the officers, and Morris.

Officer Stanfill of the City of Jackson Police Department, arrived at the scene of the wreck sometime after three or three thirty in the morning and observed the wrecked silver Camaro. Officer Stanfill testified that Barham initially "denied having any knowledge . . . of the accident."

> I personally recall him stating to me and another officer that he was just walking by, and subsequently we discovered car keys in his pants pocket and an item that belonged in the car, and so we questioned whether or not he had stolen these items, and at that point we were informed by [Barham] that, no, he had been driving the vehicle and he had permission to have the vehicle.

Barham identified the owner of the Camaro as Sam Parham, who later confirmed that Barham had not stolen the car and "was allowed to have possession of the [it]."

Officer Stanfill also opined that Barham was intoxicated because of "the smell of an alcoholic beverage. . . . a lot of irrational answers, avoiding questions when asked had he been drinking, very belligerent behavior, not typical behavior of an individual that had just been involved in a wreck and had not had any reason to conceal the fact he'd been involved in a wreck." Officer Stanfill recalled Barham stating that "he'd been drinking sometime quite earlier in the night but not in connection to the accident." Officer Stanfill confirmed that he attempted to conduct field sobriety tests on Barham but was unable to do so because of Barham's refusal to cooperate and irrational behavior. Officer Stanfill acknowledged that he did not observe Barham drive or operate the car.

Sergeant Greg Slack of the Jackson Police Department also testified and largely corroborated the testimony of the other responding officers. He also opined that Barham was intoxicated. He further stated that Barham was uncooperative and denied being the driver of the car. Sergeant Slack acknowledged that he did not see Barham drive or operate the car.

Sam Parham, Jr., testified that he owned the silver Camaro involved in the instant case and clarified that on June 30, 2010, the car's "tire [had] blown out." He said that there was no other damage to his car. He confirmed that he had allowed Barham, his brother-in-law, and "Dominique," a woman he met through family, to use the Camaro.[1] Parham said, "but I knew [Barham] wasn't gonna be the driver. . . . 'Cause I knew he didn't have no license." Parham testified that if Barham had "shown up on his own and said, 'I want to borrow your car,'" Parham would not have loaned Barham the car. To Parham's knowledge, Dominique was the driver, not Barham. Parham testified that around two or three o'clock that morning, Dominique came to his house and told him his tire had blown out and Barham had stayed with the car. He said that she left, and he went to the scene. Parham said he did not know how Dominique arrived at his house or how she left.

Robert Perkins testified that he was Barham's father and had been to City Court earlier for his son. There he encountered Morris, who told him that he saw someone standing by the wrecked car but that he did not know who had been driving the car.

The jury found Barham guilty of driving under the influence and driving on a revoked license and set a $500 fine for each offense. After arguments from counsel and review of Barham's prior criminal record, which showed four previous convictions for driving on a suspended license, the trial court sentenced Barham to eleven months and twenty-nine days on each conviction to be served concurrently. Barham filed a motion for acquittal or new trial, which was denied. Barham timely filed the instant appeal.

## ANALYSIS

Barham challenges the sufficiency of the evidence supporting his convictions for DUI and driving on a canceled, suspended, or revoked license. Specifically, he argues there was no evidence that he was driving the car or driving the car while impaired. The State responds that the evidence is sufficient to support Barham's convictions. We agree.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the

---

[1]A last name for "Dominique" was not provided in the record.

light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." <u>Henley v. State</u>, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." <u>Bland</u>, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Id.</u> (citing <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982)).

The Tennessee Code defines the offense of driving under the influence as follows:

(a) It is unlawful for any person to drive <u>or to be in physical control of</u> any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess;

T. C. A. § 55-10-401(2010) (emphasis added).

The Tennessee Supreme Court declared that "in order for a violation of T.C.A. § 55-10-401(a) to occur, the vehicle's engine need not be running, and the vehicle need not be actually moving at the time. Convictions have been sustained even though no one saw the vehicle in motion or the accused driving. This is so because '[l]ike any other crime, driving

under the influence of an intoxicant can be established by circumstantial evidence.'" State v. Lawrence, 849 S.W.2d 761, 763-64 (Tenn. 1993) (citations and footnote omitted). The Lawrence Court held that a person also could be found "in physical control of" a vehicle if he was asleep in the driver's seat of a car parked on a public street. Id. Lawrence continued:

> We are persuaded that the totality of the circumstances approach in assessing the accused's physical control of an automobile for purposes of T.C.A. § 55-10-401(a) should be followed in Tennessee. . . . Thus, when the issue is the extent of the accused's activity necessary to constitute physical control, as in the instant case, the test allows the trier of fact to take into account all circumstances, i.e., the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise. . . .
>
> . . .
>
> It is our opinion that the Legislature, in making it a crime to be in physical control of an automobile while under the influence of an intoxicant, "intended to enable the drunken driver to be apprehended before he strikes."

Id. at 765 (citations omitted). Lawrence upheld a DUI conviction wherein the defendant was found asleep in the driver's seat of a vehicle parked in the middle of a public road. The defendant had the car keys in his pocket, had slurred speech and the smell of alcohol in his breath, and he failed the field sobriety test. As in the present case, the defendant was alone, and no one else was in the area.

Ten years after Lawrence, the Tennessee Supreme Court adopted the "reasonably capable of being operated standard," in which "the proper focus was not narrowly on the 'mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move.'" State v. Butler, 108 S.W.3d 845, 852 (Tenn. 2003) (quoting State v. Smelter, 674 P.2d 690, 693 (Wash. App. 1984)). "Thus, the Smelter Court held that where 'circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in' physical control of the vehicle.'" Id. (quoting Smelter, 674 P.2d at 693).

Officers Mullikin and Stanfill each testified that they found Barham at the scene of the wreck, a public street, with keys to the silver Camaro in his pocket. Officer Haddix testified that he saw Barham leaning into the driver's seat pulling out part of the CD player. Barham eventually informed the officers that Parham had loaned him the car. Though Parham testified that he would not have permitted Barham to drive the car, and Barham denied driving the car, Morris as well as each responding officer testified that Barham was the only other person at the scene of the accident.

We view this case no differently than State v. Bryan, No. M2003-01366-CCA-R3-CD, 2004 WL 1533828, at *4 (Tenn. Crim. App. July 7, 2004). Bryan held that the evidence was sufficient to support the defendant's conviction for driving under the influence and driving on a revoked license where the officer found the defendant "bent over under the hood" of a truck which was blocking an intersection. Id. at *1. The defendant told the officer the truck belonged to a female who walked off the scene. The defendant could not name the woman, and he smelled strongly of alcohol and was unsteady on his feet. He "performed 'very poorly' on three field sobriety tests" and refused to take a breathalyzer test. Id. "The officer related that, during the approximate fifty-minute period that he was at the scene, no one ever approached him claiming any 'connection' with the truck, nor was a woman ever seen walking in the area." Id. In affirming the conviction, this court stated "[i]n the absence of any credible proof that this driving might have been done by someone else, it was reasonable for the jury to infer that it was done by the Appellant." As in Bryan, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Barham either drove or was in physical control of the car on a public road while intoxicated.

Barham also challenges the sufficiency of the evidence supporting his conviction of driving under a revoked license on the same grounds. Having rejected Barham's argument that his DUI conviction was insufficient because no one saw him driving the car, we conclude, based on the same reasoning and analysis, that the evidence was sufficient for a reasonable jury to find that Barham was driving a car while his license was suspended, cancelled, or revoked. Bryan, 2004 WL 1533828, at *4. Accordingly, the judgments of the trial court are affirmed.

 

_____
CAMILLE R. McMULLEN, JUDGE