FILED

04/16/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs April 14, 2026

## STATE OF TENNESSEE v. RHONDA CAROLE STERBENZ

**Appeal from the Circuit Court for Coffee County**
**No. 2022-CR-48457   William A. Lockhart, Judge**

_____

### No. M2025-00912-CCA-R3-CD

_____

Rhonda Carole Sterbenz, the Defendant, was convicted by a Coffee County Circuit Court jury of driving under the influence (DUI), fifth offense; DUI per se, fifth offense; violating the open container law; and failing to exercise due care. *See* T.C.A. § 55-10-401 (2024) (DUI); § 55-10-416 (2024) (open container); § 55-8-136 (2024) (failure to exercise due care). The DUI convictions merged, and the Defendant received an effective sentence of two years and one day. On appeal, the Defendant claims that the evidence is insufficient to support her DUI convictions. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and STEVEN W. SWORD, JJ., joined.

John E. Nicoll, District Public Defender; Brennan M. Wingerter, Public Defender-Appellate Division; and Willis McKee (at trial), Assistant Public Defender, for the appellant, Rhonda Carole Sterbenz.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Craig Northcott, District Attorney General; and Michael S. Hibdon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was seen on February 3, 2022, by a Coffee County Sheriff's investigator standing outside her inoperable motor vehicle after a 9-1-1 caller reported that a vehicle had hit a sign off the roadway and the driver smelled of alcohol. The Defendant exhibited several signs of impairment, and the investigator found a half-empty bottle of alcohol in the vehicle. The vehicle's engine was still warm, and the Defendant admitted to having drunk alcohol earlier and to pulling her vehicle off the roadway because it had

mechanical issues. The investigator arrested the Defendant for DUI, and a test of her blood obtained approximately one hour later revealed a blood alcohol concentration of .221%.

At the trial, Coffee County Sheriff's Investigator Cody Koon testified that he received basic police academy training for determining whether a person was driving under the influence. He detailed that he was trained to look for evidence of a suspect's red, watery eyes; slurred speech; unsteadiness; delayed reactions; and difficulty focusing on multiple tasks at one time. He stated that he also received training in administering field sobriety tests. He noted that he had participated in about five DUI investigations. Investigator Koon stated he regularly responded to motor vehicle crashes.

Investigator Koon testified that he and his vehicle were not outfitted with cameras on the night of the arrest. He stated that he investigated the Defendant as a result of a 9-1-1 call received at 10:55 p.m. A recording of the call was received as an exhibit and played for the jury. The recording reflected that the caller described the driver as a woman who "smelled like alcohol" and that the woman's vehicle "crashed through a signpost" and was parked alongside "Grace Haven's Circle."

Investigator Koon testified that he arrived at the crash site at 11:03 p.m. and observed that the Defendant's vehicle had hit a street sign and that the driver's side door and hood were open. He stated that he saw the Defendant near the driver's side door with a "battery jump box." Photographs of the vehicle and its location were received as an exhibit. He said that the roadway was wet and that the weather was cool and clear. He stated that no obstacles were in the road, that the roadway was straight, and that there were no signs of tire marks on the roadway from the vehicle braking before the crash. He stated that the Defendant's vehicle's engine was warm but not running.

Investigator Koon testified that when he approached the Defendant, he noticed she was unsteady on her feet; had red, watery eyes; and had a strong odor of alcohol coming from her breath. He said she told him that she was not injured and that she had consumed alcohol earlier that day. The Defendant informed him that she would not attempt a field sobriety test due to a prior hip injury. He stated that the Defendant said that she had "to pull over" her vehicle off the roadway because the vehicle had "issues." He said that the Defendant consented to a search of her vehicle and that he found a half-empty bottle of Jim Beam Red Stag liquor in a brown bag between the driver's and the passenger's seats. Photographs of the Defendant's vehicle and the bottle were received as exhibits. Investigator Koon testified that he identified the Defendant as the driver of the vehicle, but that he did not observe the Defendant driving the vehicle. He stated that the Defendant responded that she did not know "exactly where she was" nor the time. He said he placed the Defendant under arrest for DUI.

Investigator Koon testified that he took the Defendant to the Coffee County jail at 11:23 p.m. for a blood draw. He discovered that the jail did not have the staff to draw her blood and that he took her to Unity Medical Center, where the Defendant's blood was drawn at 12:15 a.m.

On cross-examination, Investigator Koon testified that he did not take any notes while investigating the incident. He stated that he wrote his incident report the same morning as the blood draw. He admitted that the arrest warrant application stated that the Defendant had been drinking "earlier" and did not specify if earlier referred to the day of the warrant application. He agreed that he testified at a preliminary hearing that the Defendant "didn't advise specifically when or how she drank. She had just said that she had drank previously that night." He said that he did not know how long the Defendant's vehicle had been on the side of the roadway before he arrived. He affirmed that he did not know when the Defendant drank from the bottle, nor if she drank while driving.

On redirect examination, Investigator Koon testified that when he used the term "day" he was indicating that the Defendant drank prior to when he met the Defendant that night. He said that he believed the Defendant had been drinking and had been driving her vehicle because the vehicle was parked in an abnormal way, was over the road curb, and was "against" a street sign. He testified that even though the roads were wet, there was no evidence that a road obstruction led to the Defendant's vehicle troubles. Additionally, he observed that the Defendant's speech was slurred and that she was unsteady on her feet. He stated that all of his observations supported his reasoning that the totality of the circumstances supported that the Defendant had been drinking and had been driving.

Tennessee Bureau of Investigation (TBI) Special Agent Kelly Hopkins, an expert in the toxicology of alcohol, testified that she analyzed the Defendant's blood sample for the presence of alcohol. She stated that she received specialized training and education to qualify her to work in the TBI toxicology unit. She said that the TBI used an extensive evidentiary verification system to ensure that samples received by the lab were properly handled and analyzed. She testified that the Defendant's blood alcohol content was .221%. A TBI alcohol report with the Defendant's blood alcohol results was received as an exhibit.

Agent Hopkins testified that the alcohol in three to five drinks could be fully absorbed by a 150-pound person within twenty minutes and that the person's blood alcohol content would be .08%. She said that a person who had stopped drinking would lose .01-.02% of the person's blood alcohol concentration level per hour. She testified that a 150-pound person would be required to drink between twelve and fourteen drinks containing one to one and a half fluid ounces of "hard liquor" over a twenty-minute period for the person with an empty stomach to reach the Defendant's reported blood alcohol content an hour after drinking. Agent Hopkins stated that a 750-milliliter bottle of hard liquor contained approximately twenty-four drinks. She said that alcohol delayed a person's

reaction time, decreased critical judgment, and resulted in slurred speech and impaired vision. She stated that a person under the influence of alcohol could not safely perform the multitasking that driving required. She said the higher the blood alcohol content, the more likely the effects of alcohol would be visible.

On cross-examination, Agent Hopkins testified that the closer in time the blood draw is to the incident in question, the more accurate the blood alcohol content percentage would be because the blood alcohol content changes over time. She stated it was possible for a crash to be discovered long after it occurred and that the blood draw of a driver would not reflect the driver's blood alcohol content at the time of the crash. She confirmed that it was possible the Defendant could have consumed enough alcohol before officers arrived to reach a blood alcohol content of .221% at testing. She said that she could not extrapolate the Defendant's blood alcohol concentration to a specific time earlier in the day because the information she had available only allowed her to determine the alcohol content at the time of the blood draw.

On redirect examination, Agent Hopkins testified that a blood draw an hour after a person was stopped by police was not unusual. She stated that a wrecked vehicle could be evidence of impairment. She said that alcohol could impair a person's decision-making ability and cause a driver to wreck. She testified that someone under the .08% blood alcohol content legal limit could still be impaired by looking at the totality of the circumstances.

Vehicle mechanic William Wilhoit testified for the Defendant. He stated that he worked on the Defendant's vehicle after the crash. He said the Defendant's vehicle was inoperable because the timing belt was damaged. He stated that a broken timing belt would cause a vehicle's power steering and braking system to revert to its manual function. He said that the Defendant's vehicle had no damage to the front bumper.

On cross-examination, Mr. Wilhoit testified that the vehicle could be pushed even without an operable engine. He stated that once a vehicle loses engine power, the resulting loss of power steering can increase the difficulty of driving the vehicle. He said that the vehicle's striking another object would not affect the timing belt's integrity unless the vehicle hit "something substantial" and noted that a broken timing belt would not change the direction of the vehicle.

After receiving the proof, the jury found the Defendant guilty of DUI, fifth offense; DUI per se, fifth offense; violation of the open container law; and failing to exercise due care. After merger of the DUI convictions, the Defendant was ordered to receive an effective sentence of two years and one day. This appeal followed.

The Defendant contends that the evidence is insufficient to support her DUI convictions because the State did not prove beyond a reasonable doubt that she was in physical control of an operable motor vehicle while intoxicated. The Defendant does not challenge any of her other convictions on appeal. The State responds that the evidence is sufficient to sustain the Defendant's DUI convictions. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 55-10-401 states in relevant part:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]

A totality of the circumstances approach is used in determining whether a defendant is in physical control of a vehicle. *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993). The jury is permitted to consider "*all* circumstances," including the defendant's location in relationship to the vehicle, the location of the ignition key, whether the motor was running, the defendant's ability to direct the use or non-use of the vehicle, and whether the vehicle was capable of operation. *Id*. (emphasis in original).

The Defendant relies upon the vehicle's inoperability to support her claim that no evidence demonstrated she was in physical control of a motor vehicle while intoxicated. However, the Defendant conflates the operability of the vehicle as the deciding factor rather than its being just one of the factors to be considered in determining whether someone was in physical control of a motor vehicle. *See id*.

The record reflects that the evidence is more than sufficient for a rational trier of fact to determine beyond a reasonable doubt that the Defendant committed the DUI offenses. The Defendant was by the driver's side door when Investigator Koon arrived, had a battery jump box in her hand, and stated she was attempting to restart her vehicle. Investigator Koon testified that the Defendant's vehicle's engine was warm, that there was no one else in the Defendant's vehicle, and that the vehicle was partially over a curb and against a street sign. He testified that the Defendant informed him that she had to pull off the roadway because her vehicle was having "issues." Investigator Koon found a half-empty bottle of alcohol in the Defendant's vehicle, and the Defendant admitted to drinking alcohol earlier. Investigator Koon testified that the Defendant had slurred speech, was unsteady on her feet, had red, watery eyes, and a strong odor of alcohol coming from her breath. The Defendant's blood was drawn for testing about an hour after her arrest. Agent Hopkins determined that the Defendant's blood alcohol content was .221% and that twelve to fourteen drinks consumed during a one-hour period would have been required for the Defendant to reach this blood alcohol concentration level.

Considering the totality of the circumstances, a rational trier of fact could have determined beyond a reasonable doubt that the Defendant was under the influence of alcohol while driving or being in physical control of her motor vehicle based upon the Defendant's statements, the officer's observations of the Defendant's impairment, the circumstances of her vehicle's crash, and her .221% blood alcohol content one hour after her arrest. The Defendant contends that the evidence is insufficient because no direct evidence was presented at the trial that the Defendant was intoxicated contemporaneously with her driving an operable vehicle. However, the circumstantial evidence is sufficient for the jury to infer that the Defendant was under the influence while driving or being in physical control of a motor vehicle. *See Hall*, 976 S.W.2d at 140; *Sutton*, 166 S.W.3d at 691. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

s/ **Robert H. Montgomery, Jr.**

ROBERT H. MONTGOMERY, JR., JUDGE