# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 20, 2013 Session

## STATE OF TENNESSEE v. CHRISTOPHER S. KINSLER

**Appeal from the Criminal Court for Hamblen County**
**No. 11CR490     Thomas Wright, Judge Sitting by Interchange**

---

**No. E2012-01895-CCA-R3-CD - Filed October 30, 2013**

---

The Defendant, Christopher S. Kinsler, was convicted by a Hamblen County Criminal Court jury of fourth offense driving under the influence (DUI), a Class E felony. *See* T.C.A. § 55-10-401 (2012). The trial court sentenced the Defendant as a Range I, standard offender to two years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction, (2) the State violated the rules of discovery by failing to provide notice of expert testimony, (3) trial testimony contained inadmissible hearsay, and (4) his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Troy L. Bowlin, II (on appeal), Knoxville, Tennessee, and Jonathan M. Holcomb (at trial), Morristown, Tennessee, for the appellant, Christopher S. Kinsler.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Dan E. Armstrong, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Defendant's conviction for driving under the influence after his car was found parked in the middle of a road. At the trial, Morristown Police Officer David Campbell testified that he had been a police officer for eight years and had received DUI training. He said that on February 19, 2011, he saw a white Camaro parked in the road and that the driver's side tires were about one to two feet in the oncoming lane of traffic. He said that the road did not have painted lines but that a crack ran through the center. He

noticed that the passenger-side door was open and said he watched the car for a few seconds but did not see any movement. He said he approached the car.

A video recording of the officer's actions was played for the jury, which showed the Defendant's car parked in the right-hand lane of travel with the driver's side tires across the center of the unmarked road. The passenger-side door was open as Officer Campbell approached the driver's side door. The officer asked the Defendant what he was doing in the middle of the road, and the Defendant said, "to let him out." The officer asked for the Defendant's identification, and the Defendant asked why he wanted to see it. The Defendant said that the car was parked on the side of the road, that they were not bothering anyone, and that the officer could charge them if he wanted. The officer told the Defendant that his car was parked in the middle of the road. When asked how much alcohol the Defendant had consumed, he said, "not much." The Defendant told the officer that he and his wife had an argument.

The video recording showed that a second officer approached the passenger-side door while Officer Campbell returned to his police cruiser. Officer Campbell returned to the Defendant's car, and the second officer told Officer Campbell that the Defendant was reaching for the car keys. When Officer Campbell told the Defendant to get out of the car, the Defendant said he was only talking to his friends. The Defendant was placed in handcuffs and taken into custody. He asked the officers what the problem was with his sitting in the car and talking to his friends while intoxicated. Officer Campbell stated that he saw one open beer bottle inside the car and that Ralph Davis, a passenger, admitted the bottle was his.

The video recording showed two passengers inside the car. Ralph Davis told Officer Campbell that he and the second passenger were brothers. The car was located near the Davis brothers' sister's home, and Officer Campbell walked to their sister's home. Officer Campbell told her that the Defendant's car was parked in the middle of the road, that all three men were intoxicated, and that the Defendant was going to jail. The sister permitted the brothers to stay overnight at her home.

Officer Campbell testified that the Defendant was in the driver's seat, that two passengers were inside the car, and that one of the passengers had an open beer. He said he immediately noticed the odor of alcohol and the Defendant's slurred speech. He said he obtained the Defendant's driver's license and returned to his police cruiser. He said that while he was at his cruiser, Lieutenant Antrican arrived and approached the passenger-side door. Officer Campbell returned to the Defendant's car and said that Lieutenant Antrican told him the Defendant was reaching for the car keys. He concluded that the Defendant was a "flight risk" and placed the Defendant under arrest. He said his usual practice was to

request an individual perform sobriety tests at the local jail when he believed the person was a flight risk. He said that during the trip to the jail, he asked the Defendant if he would submit to a breathalyzer test and that the Defendant refused to submit to "any kind of test."

On cross-examination, Officer Campbell testified that he watched the Defendant's car for about thirty seconds before approaching it and that the car did not move. He said it did not require much training to determine the Defendant was intoxicated. He asked the Defendant why his car was parked in the middle of the road and why the door was open but did not recall mentioning he was investigating whether the Defendant was driving under the influence or asking the Defendant whether he had been driving the car. He did not know whether the car would start and assumed it would.

Officer Campbell testified that he looked inside the car, although Lieutenant Antrican performed an inventory search. He denied seeing tools, electrical fuses, or tape. On redirect examination, he stated that he saw no evidence to suggest the car had been parked in the road for any length of time. On recross-examination, he denied feeling the hood to determine if the engine was warm.

Morristown Police Lieutenant Nathan Antrican testified that on February 19, 2011, he assisted Officer Campbell at the scene. He said that he approached the Defendant's car, that the Defendant was in the driver's seat, and that two passengers were inside. He saw the keys in the ignition and an open beer bottle. He concluded based on his experience and training that the Defendant was under the influence of alcohol.

On cross-examination, Lieutenant Antrican testified that the Defendant's car was not running when he arrived and that he never attempted to start the car. He said he assumed the car was operational and did not feel the hood to determine if the engine was warm. He did not know if the car broke down and stopped in the middle of the road. He agreed the video recording showed that the term "DUI" was never mentioned to the Defendant. On redirect examination, he stated that nobody said the car would not start.

Rick Long, owner of Extreme Towing and Automotive, testified that he towed cars and trucks for the Morristown Police Department and that he towed a white 1995 Chevrolet Camaro on February 19, 2011. He said that he parked the car inside a building at his business and that when he attempted to move the car outside, it would not start. He said that the Defendant's wife called about picking up the car and that he requested she bring written permission from the Defendant allowing him to release the car to her. He said that the Defendant's wife brought the authorization, that he released the car to her, and that she drove the car away.

Mr. Long testified that based on his experience, a kill switch was a button on a vehicle that stopped all electricity to the vehicle, preventing it from starting. He agreed the engine would not operate if the kill switch were used.

On cross-examination, Mr. Long testified that he did not see Ms. Kinsler arrive at his business, that he assumed someone brought her there, and that he did not know what, if anything, the person who brought Ms. Kinsler did while she obtained the Defendant's car. He denied seeing a kill switch on the car. He said that electrical problems and blown fuses might prevent a car from starting. He did not know what prevented the car from starting.

On redirect examination, Mr. Long testified that he did not look for a kill switch on the car but that he had reason to believe a switch was on the car. On recross-examination, he stated that he thought the car had a switch because he mentioned to Ms. Kinsler that the car would not start. He said Ms. Kinsler told him that a switch under the dash started the car.

Ralph Davis testified that he and the Defendant were friends and that he was a passenger in the Defendant's car on February 19, 2011. He said that the car would not start and that they were inside the car drinking when the police arrived. He said they were drinking inside the car because his sister would not allow them to drink in her house. He denied the Defendant's driving the car while under the influence. He said the Defendant was intoxicated by the time the police arrived.

Mr. Davis testified that he drove Ms. Kinsler to the towing company to obtain the Defendant's car. He said he installed a new fuse and taped up "the wire" when Ms. Kinsler entered the office. He denied attempting to start the car after installing the fuse and taping the wire. He said that Ms. Kinsler started the car and that he told her to go home because he did not know how long the car would operate. He denied being told to flip the kill switch.

On cross-examination, Mr. Davis testified that the Defendant drove the car that night and that at about 8:00 or 9:00 p.m., they arrived at the location where the car stopped running. He said they were returning from fishing. He said later, though, that they were returning from purchasing beer when the car stopped running. He denied the men drank alcohol while fishing. He said that the Defendant did not want to drink but that the Defendant was intoxicated by the time the police arrived. He said that they bought a twelve-pack of beer and consumed most of it before the police arrived.

The Defendant testified that he believed the car stopped operating around 9:30 p.m. He said he and the Davis brothers went fishing earlier that day and returned to their sister's home to clean the fish. He said they decided to sit inside his car because their sister did not allow smoking and drinking in her home. He stated that his car stopped in the middle of the

road, that he called a friend who worked on cars, that the friend did not answer his call, and that he began to drink. He denied that he drove the car while drinking and said the car would not start.

The Defendant testified that he did not tell the officers that the car would not start because he thought the officers were arresting him for public intoxication. He denied knowing he was being arrested for DUI. He said he was embarrassed by his actions that night and agreed he was intoxicated. He said he took the keys from the ignition because he thought he was going to jail. He said two small bottles of liquor were inside the car.

The Defendant testified that his car did not have a kill switch before the night of his arrest. He said that after his wife returned home with his car, the friend, whom he called after the car stopped running, worked on the car. He said that a wire attached to the fuse box and the steering column bracket "shorted out" and that his friend installed a "push button." He denied having electrical tape or being near a store to obtain the needed materials the night of his arrest. He said he called his friend because the friend had a tow truck if the car could not be repaired that night.

On cross-examination, the Defendant testified that he did not mention to the officers his going fishing or the car's not working. He said that he knew his car was in the road but that other drivers could drive around his car. He agreed he only told the officers that he and his wife argued and thought this might prevent his arrest for public intoxication. He said the kill switch was only an extra button that permitted the car to start if the electrical wires failed. He said the switch was installed in plain sight, not under the dash. He admitted he was on a public road and was intoxicated. He denied attempting to repair the car that night because he did not know what was wrong with it.

The Defendant testified that he called Rick Ballard that night, that Mr. Ballard came to court previously about this case, and that Mr. Ballard died before the trial. He said Mr. Ballard had been a "backyard mechanic" and had worked from his home.

The Defendant testified that he left his car in the road while he and the Davis brothers cleaned the fish they caught earlier that day. He denied drinking before they arrived at the location where the car stopped. He agreed he told the officers that he was there "to let him out" when asked why he was sitting in the car. He said that he meant he had not been driving on the road when he said, "no road," in the recording.

Upon this evidence, the jury convicted the Defendant of DUI. The parties stipulated that this was the Defendant's fourth offense. The trial court sentenced the Defendant to two years' confinement. This appeal followed.

# I

The Defendant contends that the evidence is insufficient to support his conviction. Although he concedes that he was intoxicated and that his car was on a public road, he argues the evidence is insufficient to support a finding that he was in physical control of the car because it was incapable of operation. The State responds that the jury discredited the Defendant's testimony and that the evidence is sufficient. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Relevant to this appeal,

[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways on the state, or on any streets or alleys, . . . while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous systems or combination therefore that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess[.]

T.C.A. § 55-10-401 (2012). A totality of the circumstances approach is used in determining whether a defendant is in physical control of a vehicle. *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993). This analysis permits the fact finder to consider "all circumstances," including the defendant's location in relationship to the vehicle, the location of the ignition key, whether the motor was running, the defendant's ability to direct the use or non-use of the vehicle, and whether the vehicle was capable of operation. *Id.*

In the light most favorable to the State, the record shows that the Defendant was in physical control of the car. Officer Campbell and Lieutenant Antrican found the Defendant's car parked on a public road with the engine off, the Defendant in the driver's seat while intoxicated, and the key in the ignition. Although the Defendant and Mr. Davis testified that the car was inoperable because of a faulty electrical wire connected to the steering column, Mr. Long testified that Ms. Kinsler told him the car had a kill switch under the dash. This contradicted the Defendant's testimony that the kill switch was installed after Ms. Kinsler retrieved the car from the towing company and that the car would not operate the night of his arrest. The jury's verdict shows that it credited Mr. Long and the police officers' testimony, that it discredited the Defendant's testimony, and that it found that the Defendant was in physical control of the car. Likewise, the jury's verdict shows that it discredited the Defendant's testimony that he was not drinking and driving before the car stopped. The credibility of the witnesses is determined by the jury. *See Bland*, 958 S.W.2d at 659. The evidence is sufficient, and the Defendant is not entitled to relief on this basis.

**II**

The Defendant contends that the State failed to comply with the rules of discovery and that he should receive a new trial. He argues that although the State provided notice of Rick Long's testifying at the trial, it failed to provide notice that he would testify as an expert regarding the description and presence of the kill switch on the Defendant's car at the time of his arrest. The State responds that the issue is waived for not being raised in the trial court and that alternatively, the Defendant has failed to show the State violated the rules of discovery. We agree with the State.

Tennessee Rule of Evidence 103(a)(1) requires "a timely objection or motion . . . , stating the specific ground of objection if the specific ground was not apparent from the context." Our supreme court has concluded that "a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'" *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952)). Tennessee Rule of Evidence 702 states, "If scientific, technical, or otherwise specialized knowledge will substantially assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion[.]"

We conclude that the issue is waived because the Defendant failed to raise an issue of a discovery violation in the trial court. Likewise, the Defendant failed to include documentation related to the discovery process in the appellate record, and the record fails to show what, if any, discovery was conducted before the trial. In any event, Mr. Long did not testify as an expert. Mr. Long was asked if he was familiar with a kill switch and its purpose. He testified that a kill switch was a button on a vehicle that prevented an engine from operating and agreed that if the kill switch were turned on, a car would not start. Mr. Long testified that he was knowledgeable about kill switches and knew their purpose. He did not provide an opinion, lay or expert, but rather provided factual information. The Defendant is not entitled to relief on this issue.

### III

The Defendant contends that Rick Long's testimony at the trial contained inadmissible hearsay. He argues Mr. Long's testimony that Ms. Kinsler said the Defendant's car had a kill switch was inadmissible hearsay. The State responds that the issue is waived because the Defendant did not object to the testimony in the trial court. We agree with the State.

Tennessee Rule of Evidence 103(a)(1) requires "a timely objection or motion . . . , stating the specific ground of objection if the specific ground was not apparent from the context." Our supreme court has concluded that "a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'" *Robinson*, 146 S.W.3d at 493 (quoting *Norris*, 246 S.W.2d at 85).

We note first that Mr. Long's testimony was elicited by the Defendant. At the trial, counsel asked Mr. Long why he believed the Defendant's car had a kill switch. Mr. Long stated, without objection, that Ms. Kinsler told him the car had "another switch on it that you use to start the car under the dash." We conclude that Ms. Kinsler's statement about the presence of a kill switch on the Defendant's car contained inadmissible hearsay. *See* Tenn. R. Evid. 801(c) (stating hearsay "is a statement, other than one made by the declarant while testifying at the trial . . . , offered in evidence to prove the truth of the matter asserted"). The Defendant, though, failed to object. Our supreme court has concluded that inadmissible hearsay evidence admitted without objection is "rightly to be considered as evidence in the case and is to be given such weight as the jury think[s is] proper." *State v. Bennett*, 549 S.W.2d 949, 950 (Tenn. 1977) (citing *Yates v. State*, 332 S.W.2d 186,187 (Tenn. 1960)). The Defendant is not entitled to relief on this basis.

# IV

The Defendant contends that his sentence is excessive. He argues that the trial court erred by sentencing him beyond the mandatory minimum sentence and that the trial court improperly considered his previous DUI convictions in enhancing his sentence. The State responds that the trial court did not abuse its discretion in sentencing the Defendant. We agree with the State.

At the sentencing hearing, the Defendant testified that he had worked at Mahle for six months, working forty-eight to fifty-six hours per week. He said he had a three-year-old daughter and a four-year-old son. He said that he stopped drinking the night of his arrest and that the night of his arrest was the first time he drank alcohol since his third DUI arrest. He agreed his legal troubles were related to his drinking alcohol. He admitted binge drinking and said he made a poor decision to drink that night.

The Defendant's criminal history showed convictions for four assaults, violating the habitual motor vehicle offender law, violating the child restraint law, seven public intoxications, resisting arrest, disorderly conduct, child endangerment, possession of legend drugs, violating the seatbelt law, four probation violations, under age consumption, vandalism, and leaving the scene of an accident.

The trial court found statutory enhancement factor (1) applied based on the Defendant's history of criminal behavior and convictions. *See* T.C.A. § 40-35-114(1) (2010) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range."). The court noted the Defendant's previous convictions for assault, resisting arrest, evading arrest, driving on a revoked license, public intoxication, leaving the scene of an accident, and violating the habitual motor vehicle statute. The court found that the Defendant received the benefit of probation numerous times and was sentenced to "short jail terms." It found that probation and brief periods of confinement had failed to work previously. The Defendant addressed the court and said that he had attempted not to drink and drive after his third DUI arrest, that he was not driving the night of his arrest, and that he was sorry for his actions.

The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and to protect society from the Defendant. It sentenced the Defendant to two years' confinement and revoked his driver's license for eight years.

The Tennessee Supreme Court adopted the current standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a

'presumption of reasonableness.'" *Id.* at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d 68 at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

Although the Defendant argues that the trial court improperly considered his previous DUI convictions to enhance his sentence, the record reflects otherwise. The court discussed the Defendant's previous convictions and noted that his convictions were related, at least in part, to periods of time when the Defendant was drinking alcohol. The court noted all the Defendant's previous convictions, including the DUI convictions, in this context. As it relates to the court's finding that enhancement factor (1) applied, the court stated that it was not considering the DUI offenses. Regarding the Defendant's criminal history, the court said "there [was] a whole lot there that [was] not even being taken into account with a fourth offense DUI." The court noted the Defendant's previous convictions for assault, resisting and evading arrest, public intoxication, leaving the scene of an accident, and violating the habitual motor vehicle offender law. We conclude that the trial court did not consider the Defendant's previous DUI convictions when determining his sentence.

A defendant convicted of fourth offense DUI is required to serve at least 150 days in confinement. T.C.A. § 55-10-403(a)(4) (2012). The trial court enhanced the Defendant's sentence from the 150-day mandatory minimum sentence to two years because of the Defendant's previous criminal convictions, the need to avoid depreciating the seriousness of the offense, and the need to protect society from the Defendant's alcohol-related behavior. Although the Defendant offered mitigating evidence of gainful employment and sobriety since his arrest in the present case, the court found that the Defendant's previous criminal

history and failed attempts at probation warranted a two-year sentence. Likewise, the Defendant previously received the benefit of short-term sentences of confinement but continued to break the law. The Defendant's lack of rehabilitation is shown by his numerous alcohol-related convictions. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE