# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 28, 2014 Session

## STATE OF TENNESSEE v. DANIEL A. ROGERS

**Appeal from the Criminal Court for Knox County**
**No. 91150     Steven W. Sword, Judge**

---

**No. E2013-01356-CCA-R3-CD - Filed April 2, 2014**

---

Daniel A. Rogers ("the Defendant") was convicted by a jury of driving under the influence, simple possession of a Schedule IV controlled substance, and driving on a suspended driver's license. The Defendant also was convicted by the trial court of violating the implied consent law, resulting in the suspension of his driver's license for one year. Following a sentencing hearing on his remaining convictions, the Defendant received a total effective sentence of eleven months and twenty-nine days suspended to supervised probation after the service of sixty days. In this direct appeal, the Defendant contends that he was denied a fair trial when the trial court declined to provide a jury instruction regarding the State's duty to preserve evidence, and he challenges the sufficiency of the evidence supporting his convictions. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments
### of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee, for the appellant, Daniel A. Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Randall Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Knox County Grand Jury indicted the Defendant on three alternate counts for driving under the influence, and one count each for simple possession of a Schedule IV controlled substance, violation of the implied consent law, and driving on a suspended driver's license. See Tenn. Code Ann. §§ 55-10-401, -406 (2008); 39-17-418 (2006); 55-50-504 (2008). The Defendant proceeded to a jury trial on February 27, 2013.

Tim Edwards, an officer with the Knoxville Police Department ("KPD"), testified that he was working as a patrol officer on the date of the incident in question. Around 3:00 p.m. on that day, he responded to a call that "two individuals, a man and a woman, [were] passed out on the ground next to a white Ford F-150" in the parking lot of the Knights Inn hotel in Knoxville. When he arrived at the parking lot, Officer Edwards saw a white F-150 "parked in the middle of the parking lot," with both the passenger's and driver's side doors open. Officer Edwards testified that he saw the Defendant "laying there face down" with his "[f]ace against the pavement" just outside the open driver's side door. When Officer Edwards blew his air horn, the Defendant was startled awake, hitting his head on the driver's side door. Officer Edwards testified that, when the Defendant stood up, he was "staggering around."

Officer Edwards searched the Defendant and discovered that the Defendant had in his pocket a silver "container with a screw-off top, which is consistent with people that normally carry pills," inside of which Officer Edwards found twelve blue pills. Officer Edwards clarified that the container was not a prescription bottle. When Officer Edwards asked the Defendant what the pills were, the Defendant responded that the pills were a "kind of nerve pill" and admitted that the pills were Alprazolam, also known as Xanax. At that time, Officer Edwards read the Defendant his Miranda rights. The Defendant admitted that he had taken two of the pills that day. Officer Edwards also testified that, looking inside the Defendant's truck, he noticed that the keys were in the ignition. Officer Edwards confirmed that the video camera on his police vehicle captured the incident, and the video was played for the jury.

Officer Edwards placed the Defendant in the back of his police vehicle, but the Defendant "kept falling asleep," and Officer Edwards continually had to wake him. Officer Edwards stated that the Defendant "couldn't tell me what was going on." Officer Edwards also noted that the Defendant's "speech was slurred while he was talking, was mumbling, [his] eyes were red and watery." Based on his observations of the Defendant, Officer Edwards concluded that the Defendant was "extremely impaired" and "unfit to drive." During his interactions with the Defendant, Officer Edwards began to feel that the

Defendant's physical condition and health were "becoming a concern." Officer Edwards testified that he normally would give a field sobriety test in such a situation; however, according to Officer Edwards, "due [to the Defendant] not being able to stay awake, [Officer Edwards] felt that it would be more of a danger to try to get him out to do one." At that point, Officer Edwards transported the Defendant to the hospital.

At the hospital, Officer Edwards questioned the Defendant further. The Defendant again admitted to having taken two Xanax pills prior to encountering Officer Edwards. The Defendant claimed he had obtained the pills "from a friend" and admitted that he was not under a doctor's care at the time. The Defendant told Officer Edwards that he had come to the Knights Inn from "the barbershop." Officer Edwards testified that, based on his experience patrolling the area, in order to drive to the Knights Inn, the Defendant would had to have driven on public roadways. Officer Edwards read the implied consent form to the Defendant, and the Defendant refused to submit to a blood sample.

Officer Edwards also testified that the Defendant was not able to provide a driver's license. When Officer Edwards ran the Defendant's driver's license information, he discovered that the Defendant's license was suspended at the time of the incident in question. The Defendant's driving record was entered into evidence which confirmed that his license was suspended at the time of the incident in question.

On cross-examination, Officer Edwards agreed that, although the Defendant stated that he had come to the Knights Inn from a barbershop, the Defendant never gave a time frame as to how recently he had been at the barbershop. Officer Edwards testified that, when he initially encountered the Defendant, he asked the Defendant for identification and that the Defendant had none. He clarified that, although the keys were in the ignition, he could not recall whether the truck was still running at the time he pulled up. Officer Edwards confirmed that he never saw the Defendant driving the truck.

Regarding the Xanax pills he collected from the Defendant, Officer Edwards testified, "Due to the length of time between the time it was confiscated and today's trial, we have since burned them. We don't keep them on a misdemeanor charge for more than four years."

At the conclusion of the State's proof, the defense moved for a judgment of acquittal, and the trial court denied the motion. The Defendant chose not to testify on his own behalf and submitted no proof.

Prior to deliberation, the defense moved to include an instruction on the State's duty to preserve evidence, and the trial court denied the motion. See 7 Tenn. Prac. Pattern Jury

Instr. T.P.I-Crim 42.23. The jury deliberated and found the Defendant guilty as charged. The trial court then found the Defendant guilty of violating the implied consent law and suspended the Defendant's driving privileges for one year. Following a sentencing hearing, the trial court merged the three driving under the influence convictions into one count and sentenced the Defendant to eleven months and twenty-nine days suspended to supervised probation after service of sixty days on both the driving under the influence and the simple possession convictions. The trial court also sentenced the Defendant to six months with four months suspended on the driving on a suspended license conviction. The trial court ordered all three sentences to run concurrently. The Defendant filed an untimely motion for new trial, which the trial court heard and denied. In this direct appeal, the Defendant contends that he was denied a fair trial when the trial court declined to provide a jury instruction regarding the State's duty to preserve evidence and challenges the sufficiency of the evidence supporting his convictions.

## Analysis

### *Destruction of Evidence*

The Defendant argues that the State violated its duty to preserve evidence when it destroyed the Xanax pills and that the trial court erred in denying his motion to include a jury instruction on the State's duty to preserve evidence. However, the State correctly notes that the Defendant's motion for new trial was untimely filed. Under Tennessee Rule of Criminal Procedure 33(b) "[a] motion for a new trial shall be in writing or, if made orally in open court be reduced to writing, within thirty days of the date the order of sentence is entered." Accordingly, "[a] trial judge does not have jurisdiction to hear and determine the merits of a motion for new trial that has not been timely filed." State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). Therefore, a trial court's erroneous consideration of an untimely motion for new trial "does not validate the motion, and an appellate court will not consider the issues raised in the motion unless the issue or issues would result in the dismissal of the prosecution against the accused." State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Therefore, "[i]f a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing." State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004) (citing Tenn. R. App. P. 3(e); Martin, 940 S.W.2d at 569). In the instant case, the Defendant's judgments were stamped filed on April 18, 2013, and the Defendant's motion was filed on June 3, 2013, outside the thirty-day period. Accordingly, the Defendant failed to timely file his motion for new trial. Consequently, this issue is waived.

When an issue is waived on appeal, however, this Court nevertheless may grant relief on a determination that plain error was committed. See Tenn. R. App. P. 36(b); State v.

Adkisson, 899 S.W.2d 626, 636-38 (Tenn. Crim. App. 1994). We will grant relief for plain error only when five prerequisites are satisfied:

> (1) the record clearly established what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice.

State v. Banks, 271 S.W.3d 90, 119-20 (Tenn. 2008); see also Adkisson, 899 S.W.2d at 641-42. The Defendant bears the burden of demonstrating plain error, and this Court need not consider all five factors "when it is clear from the record that at least one of them cannot be satisfied." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007). The Defendant has failed to demonstrate plain error in this case.

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

The Defendant challenges the sufficiency of the State's evidence supporting his convictions. The Defendant's sole argument in support of this claim is that "there was no evidence showing that [the Defendant] was in control of the vehicle, that the vehicle was operable, or that [the Defendant] had driven the vehicle."

Under Tennessee Code Annotated section 55-10-401 (2008),

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, any shopping center, trailer park, apartment house complex, or any other location which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess.

"[I]t has long been the law in this state that a driving under the influence conviction based upon physical control does not hinge on whether the vehicle's engine is running or whether the vehicle is in motion." State v. Butler, 108 S.W.3d 845, 851 (Tenn. 2003) (citing Hester v. State, 270 S.W.2d 321, 322 (Tenn. 1954); State v. Ford, 725 S.W.2d 689, 690-91 (Tenn. Crim. App. 1986)). In fact, our supreme court has held that courts must follow "the totality of the circumstances approach in assessing the accused's physical control of an automobile." State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). In Lawrence, our supreme court found that the defendant "was in physical control of his automobile within the meaning of [section] 55-10-401(a)," when an officer found him asleep in his parked truck even though the engine was off and the keys were in the defendant's pocket. See id. at 762-65. In affirming the defendant's conviction in Lawrence, our supreme court articulated relevant factors that the trier of fact should take into account when considering whether an accused was in physical control of his vehicle:

the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Id. at 765.

In the instant case, Officer Edwards testified that the Defendant was sleeping directly outside the driver's side door of his truck with the door open. In fact, Officer Edwards testified that the Defendant was so close to the open driver's door that he bumped his head on it when he was startled awake by Officer Edward's horn. Officer Edwards also recounted that, although the truck was shut off, the keys were in the ignition. Furthermore, the Defendant's own admission to Officer Edwards that he had driven to the Knights Inn from a barbershop was evidence to show that the vehicle was in operable condition and that the Defendant was capable of directing the operation of the vehicle. Furthermore, Officer Edwards testified that the Defendant was "staggering around," had trouble staying awake, had slurred speech, was "mumbling," and had "red and watery" eyes. According to Officer Edwards, the Defendant was "extremely impaired" and "unfit to drive." This evidence was sufficient to lead a reasonable trier of fact to conclude that the Defendant was in physical control of his vehicle and was under the influence of an intoxicant such that his ability to operate his vehicle was impaired. Therefore, we hold that there was sufficient evidence to support the Defendant's conviction for driving under the influence.

Pursuant to Tennessee Code Annotated section 55-50-504, a person who drives a vehicle "at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor." On multiple occasions, this Court has held that circumstantial evidence that a defendant had recently driven a vehicle is sufficient to support a conviction for driving on a cancelled, suspended, or revoked driver's license, even where the defendant never was seen driving the vehicle. In State v. Roger Dale Bryan, No. M2003-01366-CCA-R3-CD, 2004 WL 1533828, at *4 (Tenn. Crim. App. July 7, 2004), perm. app. denied (Tenn. Dec. 6, 2004), this Court held that the evidence was sufficient to support the defendant's conviction for driving on a revoked license when an officer encountered the defendant "bent over the hood" of his parked truck, even though the officer never witnessed the defendant driving the truck. There, the court reasoned that "[i]n the absence of any credible proof that this driving might have been done by someone else, it was reasonable for the jury to infer that it was done by the [defendant]." Id.; see also State v. Robert G. Barham, No. W2011-02348-CCA-R3-CD, 2012 WL 4057246, at *6 (Tenn. Crim. App. Sep. 17, 2012) (holding that the evidence was sufficient to convict the defendant for driving on a revoked license where the defendant was seen fleeing his vehicle after an accident, but was never

observed driving); State v. Richard Ferrell, No. M2009-01175-CCA-R3-CD, 2010 WL 27886, at *3 (Tenn. Crim. App. Jan. 7, 2010), perm. app. denied (Tenn. May 20, 2010) (holding that the evidence was sufficient to convict the defendant for driving on a suspended license where the officer responded to the scene of an accident and the defendant admitted that he had been driving one of the vehicles involved).

In the instant case, the Defendant was found directly outside the driver's side door of his vehicle with the door open and the keys in the ignition. He told Officer Edwards that he had driven to the Knights Inn from a barbershop. Officer Edwards ran the Defendant's information and discovered that the Defendant's driver's license was suspended at the time of the incident. The Defendant's driving record also was entered into evidence, confirming that the Defendant's license was suspended at the time of the incident. This evidence was sufficient to lead a rational trier of fact to conclude that the Defendant had driven his vehicle while his driver's license was suspended.

Although in his brief the Defendant objects to the sufficiency of the evidence generally, he cites us to no authority and offers no argument challenging the sufficiency of the evidence supporting his conviction for simple possession. That claim is therefore waived. See Tenn. R. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE

-8-